COLEMAN, Justice,
for the Court.
¶ 1. Frank Gideon Whitaker IV and Cynthia Ann Grantham were involved in a motor-vehicle accident in Warren County, Mississippi. The Warren County Circuit Court found Whitaker guilty of aggravated driving under the influence pursuant to Mississippi Code Section 63-11-30(5), sentenced him to twenty-five years and ordered Whitaker to pay Grantham $25,000. *335 Whitaker raises two issues on appeal and, in both, contends a blood sample taken from Whitaker following the collision while he remained unconscious should not have been admitted into evidence.

FACTS AND PROCEDURAL HISTORY

¶ 2. On October 21, 2012, at approximately 5:30 p.m., Whitaker, driving a white pick-up truck, and Grantham, driving a white sport-utility vehicle, collided on Oak Ridge Road in Warren County, Mississippi. Several witnesses, Burch Brown, Martin Daffron, and John Kirby Day, claim to have witnessed Whitaker’s truck traveling at an excessive rate of speed along Oak Ridge Road just moments before the accident occurred. Deputy Brandon Jones of the Warren County Sheriffs Department arrived to find medical personnel already attending to the two drivers, both of whom were unconscious. The drivers were transported to River Region Medical Center.
¶ 3. Witness Brown testified that he was putting out pine straw in his front yard when he saw Whitaker’s truck traveling in excess of one hundred miles per hour just seconds before he heard the crash. Martin Daffron was traveling along Oak Ridge Road when he spotted Whitaker’s truck running “too fast for that curve.” Daffron testified that he was slowing down from roughly forty-one or forty-two miles per hour to maneuver the curve when he saw Whitaker’s truck turn “sideways” and go airborne. Daffron further testified that it was his estimation that the truck was doing in excess of fifty miles per hour or more around the curve where the accident occurred. John Kirby Day testified that he also saw Whitaker’s truck enter the ditch, go airborne, and strike Grantham’s vehicle. He ran to Grantham and, upon seeing her injuries, believed her to be dead.
¶ 4. Sergeant Jason Bailess arrived and joined Deputy Jones at the scene. Sergeant Bailess testified that he smelled a strong odor of alcohol coming from Whitaker but was unable to obtain a breath sample or consent to a blood sample due to Whitaker’s unconscious state. Sergeant Bailess then filled out an affidavit for a search warrant, requesting a blood sample be taken from Whitaker, having suspected him of driving under the influence. Justice Court Judge Jeff Crevitt issued the search warrant requested by Sergeant Bailess.
¶ 5. Sergeant Bailess then drove to River Region Medical Center and had the nurse caring for Whitaker draw blood as requested by the search warrant. The attending nurse, James Davidson, drew the blood sample from Whitaker with the blood alcohol kit provided by Sergeant Bailess. Sergeant Bailess testified that he watched Nurse Davidson withdraw the blood after first preparing the area with Betadine solution. Sergeant Bailess then took the samples from Nurse Davidson and affixed labels to them and had Nurse Davidson sign that he had taken the blood sample.
¶ 6. Upon his return to the sheriffs office, Sergeant Bailess dropped the blood sample into the evidence box. Sergeant Bailess, at a hearing on a Motion to Suppress or Exclude Evidence, testified that the report management system used by the sheriffs department issued case number 603 to the report, to which the blood sample was attached. Sergeant Bailess further testified that he was the shift supervisor and that it was his duty to approve the reports. It was during his time as shift supervisor, sometime prior to 6:00 a.m. the next day, that he realized the report management system had issued case number 603 to the case. Sergeant Bailess stated that the correct case num *336 ber issued to the accident was 607. According to Sergeant Bailess, the error occurred because the 911 operators assign the case numbers, and if other reports are filed prior to the officer returning to log the report, the computer system at the sheriffs office automatically generates the next sequential number.
¶ 7. Sergeant Bailess also testified that it is not uncommon for the 911 case numbers and the sheriffs office computer system to switch up case numbers because of the time at which various officers return to file the reports. In explaining why he changed the case number from 603 to 607, Sergeant Bailess further testified it is the shift supervisor’s job to ensure the correct case number is assigned to each report. The blood sample taken on the date of the accident, October 21, 2011, remained in the evidence locker until it was taken to the crime lab on December 7, 2011, by Samuel Winchester, another detective for the Warren County Sheriffs Department.
¶ 8. David Lockey, a forensic toxicologist for the Mississippi Crime Laboratory, testified as an expert for the State as to the method by which he tested the blood sample. Lockey testified that all test instruments were working properly and that the gas chromatograph used to test the blood revealed an ethyl alcohol concentration of 0.18. After holding the sample for at least six months, the Mississippi Crime Lab disposed of Whitaker’s blood sample, pursuant to its internal procedure.
¶ 9. On August 15, 2012, Whitaker filed a Motion to Suppress and to Compel Production of Blood Sample. On September 14, 2012, the circuit court heard the Motion to Suppress and Compel, and the district attorney informed the court that the crime lab had disposed of Whitaker’s blood sample at some time prior to the hearing. Whitaker also filed a Supplemental Motion to Suppress or Exclude Evidence. The circuit court eventually denied all of Whitaker’s challenges asserted in his Motion to Suppress or Exclude Evidence.
¶ 10. Following a bench trial, the trial court convicted Whitaker of aggravated driving under the influence under Mississippi Code Section 63-11-30(5) and sentenced him to twenty-five years. The trial court also ordered Whitaker to pay $25,000 in restitution to Grantham. Whitaker appealed and raises two main issues.

DISCUSSION

¶ 11. Whitaker raises two issues on appeal: (1) whether the trial court admitted reversible error by admitting blood-sample tests in violation of the Mississippi Implied Consent Act, and (2) whether the trial court abused its discretion when it admitted unreliable blood-sample evidence against Whitaker.
I. Whether the circuit court committed reversible error when it admitted blood-sample test results into evidence in violation of the statutory privileges afforded in the Mississippi Implied Consent Act.
¶ 12. Whitaker argues that the issue is a matter of statutory interpretation and should be reviewed de novo. However, Whitaker neglected to acknowledge that a search warrant was obtained prior to his blood being taken, articulating the issue as a matter of whether Mississippi Rules of Evidence 501 and 1103 violate constitutional protections afforded to defendants through the enactment of the Mississippi Implied Consent Act. See Miss.Code Ann. §§ 63-11-1 to 63-11-53 (Rev. 2013). Therefore, as an issue relating to the admissibility of evidence, the standard of review is abuse of discretion. Smith v. State, 986 So.2d 290, 295 (¶ 12) (Miss.2008).
*337 ¶ IB. Whitaker’s blood was taken pursuant to a search warrant, not Mississippi Code Section 68-11-7, as Whitaker claims. Section 68-11-7 provides that police may take the blood of any unconscious or dead person if reasonable grounds exist to believe they were drinking, however, the result of any testing of the blood sample “shall not be used in evidence against any such person in any court or before any regulatory body without the consent of the person so tested, or, if deceased, such person’s legal representative.” Miss. Code Ann. § 63-11-7 (Rev. 2013).
¶ 14. The Mississippi Implied Consent Act was enacted prior to the Mississippi Rules of Evidence. In 1989, following the enactment of the Mississippi Rules of Evidence, the Court held that the privilege contained in Mississippi Code Section 63-11-7 was judicially repealed by Mississippi Rules of Evidence 501 and 1103. White-hurst v. State, 540 So.2d 1319, 1324 (Miss. 1989); see also Deeds v. State, 27 So.3d 1135, 1141 (¶ 18) (Miss.2009) (“This Court has held that the Mississippi Rules of Evidence supercede statutory provisions which would render inadmissible evidence that otherwise would be admissible under the Rules of Evidence.”) Whitaker presents an interesting argument as to the role of the judiciary and Legislature, however, his blood was not taken pursuant to the Implied Consent Act. Therefore, Whitaker’s request to overrule Whitehurst is moot, as the Court has held that a “a case is moot so long as a judgment on the merits, if rendered, would be of no practical benefit to the plaintiff or detriment to the defendant.” Gartrell v. Gartrell, 936 So.2d 915, 916 (¶ 8) (Miss.2006). It is clear the Whitehurst Court’s interpretation of Mississippi Rules of Evidence 501 and 1103 would not be relevant to Whitaker, as his blood was not taken pursuant to the Mississippi Implied Consent Act.
¶ 15. Whitaker’s blood was taken pursuant to the search warrant issued by the justice court judge; therefore, the Court need not reach the constitutional challenges he raises to Whitehurst.
II. Whether the trial court abused its discretion in admitting the blood sample into evidence.
¶ 16. Again, the Court reviews a “trial court’s decision to admit or exclude evidence under an abuse of discretion standard of review.” Smith, 986 So.2d at 295 (¶ 12). Whitaker raises three sub-issues related to his claim that the trial court abused its discretion by admitting the blood evidence into court: (1) that the State failed to adhere to the appropriate chain of custody; (2) that the State failed to appropriately authenticate and identify the blood sample pursuant to Mississippi Rule of Evidence 901; and (3) that the State did not follow the procedure required under Mississippi Code Section 63-11-9 for the drawing of blood from an unconscious person.
A. Chain of Custody
¶ 17. Whitaker’s chain-of-custody argument is that Sergeant Bailess admitted that the blood was improperly labeled and he was forced to change the evidence label. To show an improper chain of custody, Whitaker bears the burden of showing “whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.” Gibson v. State, 503 So.2d 230, 234 (Miss.1987). Accordingly, the issue is whether the relabeling of the evidence by Sergeant Bailess constitutes a showing of possible interference or tampering. In Ellis v. State, Ellis argued that the nurse who drew his blood did not testify, therefore, it was possible the blood was mislabeled and substituted. *338 Ellis v. State, 934 So.2d 1000, 1005 (¶6) (Miss.2006). The Court, stating “the presumption of regularity supports the official acts of public officers,” found that the officer who witnessed the blood being withdrawn could testify sufficiently to the chain of custody. Id. at 1005 (¶ 22-23).
¶ 18. After reviewing the trial-court transcript, it is evident that Sergeant Bailess provided adequate and sensible reasons in explaining why the blood sample carried two different evidence numbers, which stemmed from the assignment of one case number by the 911 operating system and the assignment of the other case number by the auto-generated computer system at the police department. Sergeant Bailess’s explanation is sufficient evidence of a chain of custody. The labeling mistake was noticed and corrected by Sergeant Bailess within the same shift. Furthermore, Sergeant Bailess testified that the sample was the only blood sample taken on the night of the accident, preventing any tampering or substitution with another blood sample. Whitaker has the burden of showing more than a mere possibility of substitution. Id. Therefore, the trial judge was within his discretion to determine the credibility of Sergeant Bailess, as the State provided sufficient support of the chain of custody.
B. Authentication and Identification
¶ 19. Whitaker’s next argument is that the State could not properly authenticate and identify the blood sample pursuant to Mississippi Rule of Evidence 901. “Rule of Evidence 901 provides that authentication is a condition precedent to admissibility and gives illustrations regarding how documents may be authenticated.” Freeman v. State, 121 So.3d 888, 898 (¶ 23) (Miss.2013). “Documents may be authenticated by ‘Testimony of Witness with Knowledge,’ which consists of ‘[tjesti-mony that a matter is what it is claimed to be.’ ” Id. (quoting Miss. R. Evid. 901(b)(1)). To satisfy the above standard, Whitaker must present some evidence supporting an argument that the State’s witnesses testifying to the chain of custody did not possess adequate knowledge to provide such testimony. Id,. Instead, Whitaker asserts mere legal conclusions without providing any facts supporting why he has met the applicable standards. The witnesses presented were Sergeant Bailess, Samuel Winchester, and David Lockey. Sergeant Bailess was the detective in charge of the evidence on the night of the accident. Samuel Winchester transferred the evidence to the crime lab. Once at the crime lab, David Lockey performed the blood test and was able to testify as to the accuracy of the results. Therefore, without more than mere conclusions, Whitaker’s argument that the State failed to properly authenticate and identify the evidence pursuant to Mississippi Rule of Evidence 901 is without merit.
¶ 20. Whitaker also mentions that the chain of custody cannot be authenticated properly because the Mississippi Crime Lab disposed of the blood after six months. Whitaker does not directly raise the issue on appeal, nor was it raised at trial. Instead, he merely argues the State cannot authenticate the blood sample, but, as mentioned, the State properly authenticated the blood sample with the testimony of the above-named witnesses. Moreover, the Court recently has held that the disposal of blood six months after testing requires a showing of “bad faith on the part of the police” to result in any due-process violation. Harness v. State, 58 So.3d 1, 4 (¶ 13) (Miss.2011) (citing Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). Whitaker has not alleged that the police acted in bad faith. Therefore, since the State thoroughly identified the chain of custody *339 and properly authenticated the blood sample, the issue is without merit.
C. Section 63-11-9
¶ 21. Finally, Whitaker argues that the State did not provide evidence that Nurse Davidson was qualified to draw his blood pursuant to Section 63-11-19. Like the first issue, the third issue can be dismissed because the Implied Consent Act was not the basis for obtaining the blood sample. Sergeant Bailess acquired a search warrant for the blood sample obtained by Nurse Davidson.
¶ 22. Whitaker further asserts that Nurse Davidson must have testified to establish the initial link in the custodial chain; however, the State does not have to produce every “handler of evidence.” Ellis, 934 So.2d at 1005 (¶ 21). Moreover, as in, Ellis, Sergeant Bailess was present to witness the blood being drawn. Therefore, he could testify sufficiently as to the procedure and the chain of custody from the time the blood was drawn through his placing it in the evidence locker. Thus, the issue is without merit.

CONCLUSION

¶ 23. Whitaker has failed to raise any issues of merit. His constitutional challenge to the Whitehurst Court’s interpretation of the Mississippi Rules of Evidence is moot, as his blood was not drawn pursuant to the Mississippi Implied Consent Act. Whitaker also has failed to satisfy his burden of showing that the evidence was tampered with or substituted, defeating his chain-of-custody argument. Finally, Whitaker failed to present any evidence supporting his claim that the blood sample was not properly authenticated. Accordingly, the judgment and sentence of the Warren County Circuit Court are affirmed.
¶ 24. CONVICTION OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN (10) YEARS SUSPENDED AND FIVE (5) YEARS POST-RELEASE SUPERVISION AND ORDERED TO PAY $25,000 IN RESTITUTION, $5,000 IN FINES, $104 IN COURT COSTS, AND $280.50 IN STATE ASSESSMENTS, AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER AND PIERCE,
JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY DICKINSON, P.J., AND KING, J.