RANDOLPH, Presiding Justice,
for the Court:
¶ 1.- Following a jury trial in the Circuit Court of Hinds County, Mississippi, First Judicial District, Jamil Chancellor was convicted of armed robbery and armed carjacking. He was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) with ten years suspended on each count and the sentences to run concurrently. He was sentenced to an additional five years pursuant to the gun-enhancement statute. Following the denial of his motion for new trial, Chancellor timely appealed. Finding no error, we affirm Chancellor’s convictions and sentences.

FACTS AND PROCEDURAL HISTORY

¶ 2. The jury heard evidence that Jamil Chancellor had robbed Marcell Cox at gunpoint, as he was leaving Elegante Coiffures, a barbershop and salon. Chancellor demanded Cox’s money and car keys. Cox was able to escape and run inside the salon to call the police after throwing his keys on the ground. Donnie Patton, a coworker who left the salon with Cox, seeing that Cox was in distress, exchanged gunfire with Chancellor after Chancellor fired at Patton. During the shootout, Chancellor was shot in the face. Chancellor fled the scene, leaving behind Cox’s car, and ran across the street into the woods.
¶ 3. During the search for Chancellor, a police officer noticed Elisha Mason driving up and down the street. When questioned by the police, Mason stated that she had received a phone call from a friend named Jamil, asking her to come pick him up. Her description of Jamil matched that of the person who had robbed Cox. The officer then asked Mason to contact Jamil to determine his whereabouts. Chancellor was apprehended when an officer heard his cell phone ring. A gun, cell phone, and $773 were recovered from Chancellor.
¶ 4. Chancellor gave two statements to law enforcement officials. He revealed that Latanya Buckner, a/k/a World, was upset with her boss, Marcell Cox, because he refused to do anything after her car was stolen from the barber shop’s parking lot. Buckner asked Chancellor to rob her boss on a day when he would have a large amount of cash on him. Chancellor stated that he was told by Buckner to wait in some bushes near the barber shop, and she would text him when her boss was leaving. When Buckner identified Cox, Chancellor ran up to him with a gun and demanded his money. Chancellor stated that he was afraid if Buckner, who had a known affiliation with a gang, found out he had told the police about their arrangement, she would have him killed. However, Chancellor never said that he was forced or coerced by Buckner into committing the armed robbery.
¶ 5. Later, Chancellor gave another statement. He informed law enforcement officials that he was part of a plot to rob Cox after he had failed to install security cameras in the parking lot in response to Buckner’s car being stolen. Again, Chancellor did not inform the police that he had been forced or coerced by Buckner to commit the armed robbery. He also did not tell the police that he believed he would be killed if he did not do what Buckner asked of him.[1] When questioned about where he *147 had obtained the gun used in the armed robbery, Chancellor informed Detective Smith that it was given to him by a “partner.”
¶ 6. Chancellor was indicted[2] for “willfully, unlawfully, and feloniously [taking] ... the personal property of Marcell Cox ... [using] a handgun ...” and for “willfully, unlawfully, feloniously, and knowingly [taking] ... from the actual possession of Marcell Cox, [a] motor vehicle ... [while] armed with a ... handgun.” See Miss.Code Ann. §§ 97-3-79, 97-3-117 (Rev.2014). The State sought a sentence enhancement pursuant to Section 97-37-37 (Rev.2014) based on Chancellor’s “[use of] a firearm during the commission of a felony....”
¶ 7. The State filed a motion in limine to exclude testimony concerning Chancellor’s education. The State argued that “the fact that the Defendant may not have completed elementary and/or high school” was not relevant as it did not have “any tendency to make the existence of any fact that is of consequence to the determination of that action more probable or less probable than it would be without the evidence” (see Mississippi Rule of Evidence 401) and was not admissible “as a factor to determine guilt or innocence.” In response, Chancellor argued that evidence of his educational level was relevant to the volun-tariness of his confession[3] and to his defense of duress.
¶ 8. Prior to the beginning of trial, the trial court conducted a hearing on the pretrial motions, including the State’s motion regarding exclusion of evidence concerning Chancellor’s education. During the hearing, the State argued that information concerning Chancellor’s education was irrelevant. Additionally, the State argued that nothing in the record supported Chancellor’s assertion that he did not finish the third grade. However, the State agreed that if Chancellor took the stand in his defense, he certainly could testify to limited background information, including his level of education. The State argued that any other testimony would only seek to garner sympathy from the jury. In response, Chancellor argued that his educational level was relevant to his defense of duress. Chancellor also argued that the law was well-established that a witness could offer testimony regarding his background, including education level. Again, the State conceded that if Chancellor took the stand, he could be questioned as to basic background information. The court ruled that he would take the motion under advisement. Subsequently, the trial court sustained the motion and stated that Chancellor could make a proffer during the course of the trial.
¶ 9. At Chancellor’s trial, he was the only witness called by the defense. Following the instruction of the court, prior to questioning Chancellor regarding his education, counsel brought to the court’s attention his desire to question Chancellor about his educational background. The State offered no objection, and Chancellor was allowed to testify that at the time of the robbery, he was just shy of his eighteenth birthday, he was not in school, having attended only through the third grade, and he was legally blind. Chancellor testified that, prior to the robbery, he was being guarded by Buckner’s people. He stated that, when he told police that he *148 had obtained the gun used in the robbery from a “partner,” that his partner was Buckner. Chancellor stated that he did not want to use Buckner’s name when making his statements to the police because he was afraid of Buckner and what she might do to him or his family. Chancellor testified that he was afraid of Buckner because most of the people she hung out with were convicts. Chancellor testified that Buckner had kidnapped a woman and beaten her in order to find out information about Buckner’s stolen car. Chancellor considered Buckner’s threat to be real, based on her background and how she was able to retrieve her stolen car.
¶ 10. The jury returned a verdict, finding Chancellor guilty of both armed robbery and armed carjacking. Subsequently, Chancellor filed a Motion for New Trial, arguing that the verdict was contrary to the weight of the evidence. The trial court denied Chancellor’s motion for a new trial. Chancellor was sentenced to twenty-five years with ten years suspended for each count, to run concurrently, and an additional five years pursuant to the firearm enhancement. Chancellor timely appealed, raising the following issue:
The trial court erroneously prevented Jamil from putting on evidence of both his lack of education and Buckner’s criminal history thus depriving Chancellor of his opportunity to fully present his theory of defense.
Finding no error, we affirm Chancellor’s convictions and sentences.

STANDARD OF REVIEW

¶ 11. Rule 103(a) of the Mississippi Rules of Evidence, which prescribes the standard of review on appeal from eviden-tiary rulings, reads that “[ejrror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected.” M.R.E. 103(a) (emphasis added). This Court reviews a trial court’s decision to admit or exclude evidence under an abuse-of-discretion standard. See Whitaker v. State, 146 So.3d 333, 336 (Miss.2014), Smith v. State, 986 So.2d 290, 295 (Miss.2008).

ANALYSIS

¶ 12. Chancellor’s theory of defense was that he had been forced to commit the armed robbery and armed carjacking by Latanya Buckner. On appeal, Chancellor argues that he was not given the opportunity to fully present his defense of duress because the court had erred in granting the State’s motion in limine regarding his educational background and in limiting Chancellor’s cross-examination of a detective regarding Buckner’s arrest history. However, Chancellor was able to present to the jury testimony regarding his lack of education, Buckner’s association with gang members, and numerous instances of Buckner’s prior bad acts.
1. Chancellor’s Educational Background
¶ 13. On January 11, 2013, the State filed a motion in limine to exclude evidence regarding Chancellor’s level of education. Prior to Chancellor taking the stand, the parties engaged in the following bench conference:
Defense Counsel: I want to be able to talk about his education level, as I think that it’s important for his credibility. And it’s also important to show how pliable or how influential he was to the duress.
Court: It’s basic background knowledge. Any objection?
State: No objection.
Court:' All right.
*149 Accordingly, Chancellor provided the following testimony to the jury, without objection by the State:
Q: Okay. If you would, please tell me, were you enrolled in school back in March of 2012?
A: No, sir.
Q: What’s the last grade in school that you completed?
A: I completed elementary.
Q: Okay. Elementary is not a grade. I’m asking you what grade in school was the last grade that you attended?
A. Third grade.
Q. Thank you. So in school you never went beyond the third grade; is that correct?
A. Yes, sir, but I did not pass. I did not graduate.
¶ 14. Chancellor argues that Jennings v. State, 127 So.3d 185 (Miss.2013), which deals with the relevance of a defendant’s educational background to the voluntariness of a custodial confession, should apply equally to Chancellor’s claim of duress as a defense. However, Jennings is irrelevant to the facts presented in this case.
¶ 15. Chancellor was able to submit testimony to the jury that he had not completed the third grade. When questioned by the trial court as to what proof there was regarding Chancellor’s education, or lack thereof, counsel stated that the only proof was Chancellor’s own testimony. Counsel admitted at the hearing that the only proof he wanted to submit to the jury was Chancellor’s testimony that he never had made it past the third grade. Because Chancellor was able to provide the jury with the exact evidence he sought to introduce in support of his duress defense, there was no abuse of discretion, and no substantial right of Chancellor was affected. Therefore, this issue is without merit.
2. Buckner’s Criminal History
¶ 16. In support of Chancellor’s theory of defense that Latanya Buckner had forced him to rob Cox, Chancellor sought to introduce evidence showing that Buckner was a “bad woman.” Chancellor argues that'he was denied the opportunity to develop his defense when he was prohibited from cross-examining Detective Smith about Buckner’s alleged arrest history.
¶ 17. During cross-examination of Detective Smith, counsel for Chancellor asked Detective Smith if he had learned during the course of his investigation that Buckner had been “arrested for a robbery back in 1997.” The State immediately objected to the question, and the trial court sustained the objection on the ground that it was “remote in time and irrelevant to these proceedings.” Counsel then requested to make a proffer, which was allowed by the trial court.
¶ 18. In his proffer, counsel stated that he intended to question the detective about Buckner’s “arrest record,” including arrests for “domestic violence in 2007 ... a couple of [arrests] for malicious mischief, as well as the violent crime of simple assault.” It is revealed in the record that this line of questioning was developed “based upon discovery given to me and disclosed by the State ... that she had an arrest record.” When questioned by the court as to any convictions, counsel stated he was not certain, that there was “nothing from my information to know if there have been any convictions or not.” The State argued that the information was irrelevant, because some of the arrests were more than ten years old and, as far as the State knew, none of the arrests had resulted in convictions. Counsel argued that he was trying to elicit testimony from the detective as to whether he had uncovered evi- *150 denee that Buckner was “a bad woman.” Chancellor admitted that the purpose of introducing evidence of Buckner’s arrest’ history was to show that Buckner was a “bad woman” and that she would be the type of person who would coerce or force Chancellor into robbing Cox. He claimed the evidence was probative to show that Chancellor was under duress because a “bad woman ... made my client do what it is they’re saying that he did.”
¶ 19. The trial court initially sustained the State’s objection, ruling that the testimony was inadmissible on the ground that evidence of the arrest history of Buckner was barred by Rule 609 of the Mississippi Rules of Evidence because there was no evidence of any convictions and the 1997 arrest was outside the ten-year time limit for admissibility. Chancellor then argued that, because Buckner was not a witness and the evidence was not intended to be introduced for impeachment purposes, Rule 609 did not apply. The trial court then conducted a balancing test under Rule 403, finding that on the “slim chance that there may be some relevance to that evidence, I believe that that evidence will be excluded because any probative value is substantially outweighed by the danger of unfair confusion of the issues or misleading the jury.” (See M.R.E. 401, 402).
¶ 20. During direct examination, Chancellor provided the following testimony:
Q: Okay. Why is it that you’re afraid of World or Latanya Buckner?
A: She’s dangerous—
Q: Okay.
A: —and her people, everybody she be around.
Q: Okay. And when you say that she and her people are dangerous, what do you mean by that?
A: Most all of them are convicts.
Q: Okay. And let me ask, do you know about Latanya’s reputation in the neighborhood?
A: No, sir.
Q: Okay.
A: But I done heard some things that — that goes on.
Q. Involving Latanya?
A: Yes, sir.
Q: That’s what I would mean by her reputation in the neighborhood, sir. Tell me what—
At that point in the examination, the State objected on the ground of hearsay within hearsay. The trial court allowed the questioning to continue in a more limited fashion, stating, “I’ll let you go on the hearsay because it goes to what may have been in his motive, for lack of a better phrase. But to go into the specific acts of Ms. World is a whole — whole nother [sic] ball game, and I’m going to sustain the objection.”
¶ 21. The trial court allowed Chancellor to testify that Buckner had threatened to shoot him if he did not rob Cox. He also testified that, based on Buckner’s kidnap.ping and beating up a girl to get information about her stolen car, Chancellor believed her threats were real.
¶ 22. The trial judge did not err in refusing to allow Chancellor to introduce evidence of Buckner’s alleged arrests, for the proffered arrests had no connection to Chancellor.[4] The trial court properly *151 found that such arrests would only mislead and confuse the jury.
¶23. Chancellor relies on Ervin v. State, 136 So.3d 1053 (Miss.2014), for the proposition that the trial court improperly limited his presentation of his theory of defense, when he was not allowed to cross-examine Detective Smith regarding Buckner’s criminal history. In Ervin, the defendant’s brother, Michael, implicated the defendant, Charles, in an armed robbery. Id. at 1055-56. During cross-examination of a detective who had interviewed Michael, the defendant attempted to show, through a National Crime Information Center report and witness-location form, that Michael had used numerous social security numbers and birth dates, including his brother Charles’s. Id. at 1056. Charles’s theory of the robbery was that Michael had committed the crime and attempted to pin it on Charles. Id. The State objected to the questioning, arguing that it was irrelevant. Id. The trial court sustained the objection. Id.
¶ 24. On appeal, this Court held that the trial court erred in limiting Charles’s cross-examination of the detective because such limitation “adversely affected Charles’s right to a fair trial.” Id. at 1060.
Charles’s theory of the case was that his brother committed the armed robbery and then pointed police to Charles. The State argued that Charles aptly presented his theory of the defense because he questioned witnesses about the fact that “Ray Ray” was identified as the robber, and Michael was “Ray Ray.” Such questioning is not the same as evidence that Michael gave police Charles’s social security number and birthday as his own. Such evidence could have affected the jury’s understanding about Michael lying to the police and pointing the police to Charles. [] Charles was precluded from putting on such evidence, and evidence that Ray Ray was identified is not of the same vein. “The exclusion of the evidence prevented [Charles] from fully presenting his theory of the case to the jury and thus adversely affected his right to a fair trial.” We therefore reverse Charles’s convictions on this basis.
Ervin, 136 So.3d 1053, 1059 (quoting Newell v. State, 49 So.3d 66, 73 (Miss.2010)).
¶ 25. Ervin is wholly distinguishable from today’s case. Chancellor is asking to broaden the scope of this ruling to allow introduction of a person’s bad acts as a whole, for the sole purpose of suggesting that bad people do bad things. Chancellor offered no evidence that any of Buckner’s arrests ever led to actual convictions. Additionally, none of Buckner’s arrests was related to coercing someone else to do her dirty work. The trial court properly concluded that evidence of Buckner’s arrest record, if relevant, would do nothing more than confuse and mislead the jury.
¶ 26. Although Buckner’s sixteen-year-old alleged arrest record was excluded, Chancellor was permitted to present testimony regarding his claim of duress. Chancellor was able to introduce evidence that Buckner, a/k/a World, was a “female V queen” gangster in the Vice Lords; Buckner also was indicted for armed robbery and armed carjacking; Buckner used self-help to recover her stolen car, kidnapping and beating a girl in the process; Buckner was dangerous; Buckner had threatened to kill Chancellor; Buckner had people guarding Chancellor the day of the robbery; and Buckner’s people were all convicts. Chancellor testified that he *152 was scared of Buckner and her associates and that he believed Buckner’s threats were real. To the extent Chancellor wanted to paint a picture for the jury that Buckner was a “bad woman,” he clearly was able to do so. Given that Chancellor was allowed considerable leeway in developing his picture of a “bad woman,” and assuming arguendo that the trial court erred in excluding evidence of Buckner’s arrest history, such error was harmless. This issue also is without merit.

CONCLUSION

¶27. Chancellor is unable to support his argument that the trial court abused its discretion in excluding any evidence or that any substantial right of Chancellor’s was affected by any exclusion of evidence. Therefore, we affirm Chancellor’s convictions and sentences.
¶ 28. COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED, AND THE ADDITION OF FIVE (5) YEARS, TO BE SERVED CONSECUTIVELY, PER THE GUN ENHANCEMENT STATUTE, AFFIRMED. COUNT II: CONVICTION OF ARMED CARJACKING AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN (10) YEARS SUSPENDED, AND THE ADDITION OF FIVE (5) YEARS, TO BE SERVED CONSECUTIVELY, PER THE GUN ENHANCEMENT STATUTE, AFFIRMED. THE SENTENCES IN COUNT I AND COUNT II ARE TO RUN CONCURRENTLY.
WALLER, C.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ„ CONCUR. DICKINSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ.

. After interviewing Buckner, officers arrested her and charged her with armed robbery and armed carjacking.

. Latanya Buckner and Elisha Mason also were named in the same indictment. Buckner was charged with the same counts as Chancellor, while Mason was charged as an accessory after the fact.

. At a separate hearing, the trial court denied Chancellor's motion to suppress his confessions. Chancellor does not argue that denial of the motion to suppress was improper.

. Chancellor was allowed to testify regarding his fear of Buckner, based on his personal knowledge at the time of the robbery, in furtherance of his duress defense. However, Chancellor offered no evidence to show that he had personal knowledge of Buckner’s arrest record prior to his involvement in the robbery. This is not surprising since Chancellor was only three years old when Buckner was arrested in 1997. Additionally, counsel *151 admitted that he learned of Buckner's prior arrests through discovery provided by the State, not from his client. The trial court was well within its discretion in excluding evidence of Buckner’s prior arrests.