# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-01516-SCT

*CASEY MARK BURGESS a/k/a CASEY BURGESS*
*a/k/a CASEY M. BURGESS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | DONALD W. BOYKIN |
| | JACQUELINE L. PURNELL |
| | MICHAEL GUEST |
| | DEWEY K. ARTHUR |
| | MARTY MILLER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/19/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Following a jury trial in the Circuit Court of Rankin County, Casey Mark Burgess was convicted of three counts of sexual battery against his wife, S.B. He was sentenced to thirty years on each count, to run concurrently. Following the denial of his alternative motions for judgement notwithstanding the verdict or for a new trial, Burgess appealed. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The day after celebrating the couple's twelfth wedding anniversary, Burgess left S.B. and the couple's three daughters to go on a week-long drug and alcohol induced "binge." They neither saw Burgess nor had any meaningful communication with him during that time.

¶3.     Around 7:00 a.m. on August 28, 2011, S.B. was sleeping in her children's bedroom when Burgess entered the daughters' bedroom, wanting to talk to his wife. S.B. asked Burgess about his filthy appearance. He replied that he had not showered in a week, had been living in his truck, and had been bathing himself with baby wipes. S.B. suggested Burgess go to bed. He refused. Not wanting to wake the children, S.B. left that bedroom and attempted to walk into the living room to talk to Burgess. However, Burgess stopped S.B. and ordered her to the master bedroom. As S.B. began to sit on the bed, Burgess shut the door behind them, grabbed S.B. by the neck, and threw her onto the bed. He told her to shut up and do what he said "or else there's going to be three motherless children on the other side of this house."

¶4.     Burgess ordered her to undress. When she refused, he pulled her clothes off, stating, "[W]hen you find out what I've done this whole week you'll never forgive me so I'm going to have my way with you one last time." Burgess then forced S.B. to have sex with him. "[H]e vaginally raped me . . . as hard as he could . . . and I was crying and I kept just turning my head so I didn't have to look at him, and I was begging him to stop[.]"

¶5.     But Burgess did not stop. He told S.B. that she was "not getting out of here until [he was] able to ejaculate." Burgess then dragged S.B. from the top of the bed to the end of the

bed and raped her again vaginally without ejaculating. Burgess then dragged S.B. into the bathroom, applied Vaseline to his penis and to her anus, threw her against a closet wall, and raped her anally. S.B. begged Burgess to stop, but he just kept telling her to shut up and do what she was told. When this did not work for Burgess, he forced S.B. to perform oral sex on him until he ejaculated. According to S.B.'s testimony, "the whole time during all of this, he was either . . . holding me down or . . . gripping my neck and I couldn't breathe. . . . I thought he was about to snap my neck."

¶6.     The ordeal lasted about three and one half hours, followed by S.B. calling Burgess's parents and her mother.  When they arrived, she and the three children left with S.B.'s mother. The assault occurred on a Sunday. S.B. did not call the police that day. On Monday, S.B. returned to work at an elementary school attended by two of her daughters. Later that same day, S.B. saw Burgess's truck pull up at the school. Worried that he was coming after her or the children, she alerted and gave a statement to the school's resource officer, who then contacted an investigator with the Sheriff's Department, who began the investigation.

¶7.     On Tuesday, S.B. obtained a restraining order against Burgess and retained an attorney for the purposes of filing for divorce. On Wednesday morning, Burgess texted S.B. the following message: "Will you at least text me something? I'm guess [sic] I'm waiting on either charges and me picked up or nasty divorce papers. You took me off Facebook . . . ."[1]

¶8.     Later that day, S.B. pressed charges against Burgess for sexual battery.  S.B. gave a statement to the investigator, recounting the events of the attack. On Thursday, a process

---

[1]The remainder of the text chain was redacted from the version presented to the jury pursuant to a motion to suppress.

server went to Burgess's residence to serve him with divorce papers. Burgess asked the server, "Well, what do [the papers] say that I did?" The server read the papers to Burgess:

> I read this verbatim and it says that "On August 28th, the Respondent physically assaulted the Petitioner by throwing her down on the bed, demanded her to take her clothes off, told her if she made any sound there would be three motherless children, holding her down and raping her repeatedly, took her into a closet while begging to be let go. He threw her into the wall. He said he was getting–he was going to have his way with her one last time. Then he forced her to have oral sex with him. The Defendant held the Plaintiff down by keeping his arm on her neck at all times during the incident."

When the server finished reading the papers, Burgess turned to him and said, "Well, I did all that."

¶9. Later that day, a sheriff's deputy went to serve a warrant on Burgess for the assault against S.B. When the deputy arrived, no one was home. However, as the deputy walked back to his car, he saw a white truck matching the description of the one owned by Burgess. According to the deputy,

> [A]s I looked up, the vehicle I guess noticed me at the same time and pulled in the driveway, backed out, and then took a right-hand turn. As I run to my car to try to make contact with him, by the time I got to that road he was out of sight. I notified dispatch that I was in pursuit of what appeared to be Casey Burgess in that white pickup.

Approximately three to five minutes after spotting Burgess's truck leaving the driveway, the deputy responded to a 911 call reporting a one-vehicle accident near Burgess's home. Upon arrival, the deputy saw Burgess's truck had hit several trees. The driver's door was open and the truck unoccupied. An eyewitness told the deputy that the driver, a male, "took off running in the woods." Walking down an embankment, the deputy found a trail of blood. He followed

4

it and called Burgess's name. The deputy apprehended Burgess, in need of medical treatment, approximately ninety yards into the woods.

¶10.	After receiving medical treatment, Burgess met with the investigator regarding the rape and sexual-battery charges. Burgess waived his **Miranda**[2] rights and voluntarily gave a videotaped confession in which he admitted sexually battering his wife. In his own words, he had been on a "drinking and drug binge" that "messed [him] up." Burgess admitted he forced himself on S.B., forced her to have vaginal, anal, and oral sex with him against her will. Burgess confessed to telling S.B. that if she did not comply with his sexual demands their daughters would be "motherless."

¶11.	Burgess also admitted fleeing from police to avoid arrest.  According to Burgess, on the morning of August 31, he received a visit from the process server, and was alerted to the fact S.B. had filed for divorce, to include allegations of sexual battery. After the server left, Burgess left his house for a brief period. When he returned, he reached the end of his street and "I saw three deputy cars at my house. So–but I was thinking that they were there because I had–like [the server] said, ticked my wife off and she had made divorce like make it from divorce papers and stuff to charges. That is what I honestly believed." When the investigator asked, "Then why were you leaving?," Burgess replied:

> So I just–instead of turning down my street and continuing on, I turned down my street and just make a loop, like looped around. And then I saw one of the deputies backing out. No blue lights or anything. But I figured, well, if they didn't see me, then I can go, get away, like get out of here and then I'd come back. So I left out and when I got to Hollybush, I was just going too fast and I hit like a dip, and the back of my truck came up and started rolling, I guess.

---

[2]**Miranda v. Arizona**, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶12.   Burgess was indicted for three counts of sexual battery—vaginal, anal, and oral—of his wife, S.B., pursuant to Mississippi Code Section 97-3-95(1)(a). He was tried and found guilty on all counts. He was sentenced to thirty years on each count, to run concurrently. Burgess's motion for judgment notwithstanding the verdict (JNOV) or alternatively for a new trial was denied. It is from the Order of Sentence and Order denying Burgess's motions for JNOV and new trial that Burgess appeals.

## ISSUES

¶13.   Burgess raises the following eight issues on appeal:

I.    **Whether the trial judge erred by granting certain jury instructions because they constructively amended all counts of the indictment by adding the necessary element of "force."**

II.   **Whether the trial judge erred by improperly limiting Burgess's voir dire.**

III.  **Whether the trial judge erred by denying Burgess's challenges of certain jurors for cause.**

IV.   **Whether the trial judge erred by excluding evidence of S.B.'s prior sexual acts with Burgess.**

V.    **Whether the trial judge erred by denying Burgess's motions for directed verdict, peremptory instructions, JNOV, and new trial.**

VI.   **Whether the trial judge erred by giving a flight instruction.**

VII.  **Whether the trial judge erred by admitting letters into evidence at sentencing.**

VIII. **Whether the trial judge erred by admitting a redacted text message into evidence.**

6

I. **Whether the trial judge erred by granting certain jury instructions because they constructively amended all counts of the indictment by adding the necessary element of "force."**

¶14. Jury instructions are reviewed under an abuse-of-discretion standard. *Watkins v. State*, 101 So. 3d 628, 633 (Miss. 2012). "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Id.* While jury instructions should track the language in the indictment, "an instruction is not necessarily fatally defective for failure to do so, so long as the instruction 'accurately follow[s] the requisite elements of the crime.'" *Nix v. State*, 8 So. 3d 141, 145 (Miss. 2009) (quoting *Duplantis v. State*, 708 So. 2d 1327, 1343–44 (Miss. 1998)). To categorize an instruction as error, "a jury instruction's variance from the language of the indictment must be material." *Id.* (citing *Williams v. State*, 445 So. 2d 798, 806 (Miss. 1984)).

¶15. Burgess was indicted for three counts of sexual battery pursuant to Section 97-3-95(1)(a), which states in pertinent part: "A person is guilty of sexual battery if he or she engages in sexual penetration with another person without his or her consent." Burgess acknowledges the indictment tracked the language of the statute when it asserted that Burgess "engage[d] in sexual penetration . . . with S.B. . . . by inserting his penis in S.B.'s [vagina, anus, and mouth], without her consent[.]" Burgess acknowledges neither the indictment nor the statute includes force as a necessary element. However, Burgess argues that Section 97-3-99 makes force a requisite element when the defendant and victim were married and not separated and living apart at the time. Burgess essentially argues that

marriage is an absolute defense unless the State includes force in the indictment. That argument misconstrues the statute.

¶16.    Section 97-3-99 (Sexual Battery, Defense of Marriage) reads:

> A person is not guilty of any offense under Sections 97-3-95 through 97-3-103 if the alleged victim is that person's legal spouse and at the time of the alleged offense such person and the alleged victim are not separated and living apart; provided, however, that the legal spouse of the alleged victim may be found guilty of sexual battery if the legal spouse engaged in forcible sexual penetration without the consent of the alleged victim.

Prior to 1993, marriage was an absolute defense. *See Giles v. State*, 650 So. 2d 846, 855 (Miss. 1995) (Prather, P.J., concurring). The last clause of the current statute went into effect March 27, 1993, pursuant to H.B. 701 (titled Limitation on Spousal Defense)—"An Act to Amend Section 97–3–99, Mississippi Code of 1972, to Revise the Spousal Defense to a Charge of Sexual Battery." 1993 Miss. Laws ch. 469.

¶17.    Burgess argues that including force in the jury instructions improperly amended the indictment and thereby violated due process in that he had no notice that force was an element against which he had to defend. The record and Burgess's trial strategy belie that argument. Defense counsel's first questions in cross-examining S.B. were as follows:

> Q: Ms. Burgess . . . [y]ou were legally married at the time, correct?
> A: Yes, sir.
> Q: All right. And I believe you-your separation occurred after this, correct?
> A: The day I left on August the 28th.
> Q: That's when your separation occurred?
> A: yes.

¶18.    When the State rested, defense counsel moved for a directed verdict, citing the "marital exception defense" of Section 97-3-99. Counsel argued that the statute added an

additional element, *i.e.*, force, to sexual battery cases in which the defendant and the victim were married and not separated, and the State failed to include that in the indictment. This argument mirrored the language of defense counsel's first two questions. Defendant knew at the start that he would invoke the marital-exception defense. Yet, in his motion for a directed verdict, Defendant argued that force could not be included in the jury instructions because he had no notice that force would be an element against which he would be required to defend. It is abundantly clear that the marital-exception defense in Section 97-3-99 is not an absolute defense, if Defendant's action were forceful, simply by reading the statute—as shown by Defendant's arguing against force being included in the jury instruction.

¶19.     The State alleged Burgess committed sexual battery in that he engaged in (1) penetration (2) without consent. Burgess then asserted the affirmative defense of marriage. Force is not required to be established in sexual-battery cases unless the Section 97-3-99 affirmative defense is raised. If it is raised, the State is required to prove the use of force beyond a reasonable doubt,  to overcome the marital-defense exception of Section 97-3-99.

¶20.     The Court of Appeals addressed this issue in ***Trigg v. State***, 759 So. 2d 448 (Miss. Ct. App. 2000).[3] In ***Trigg***, the defendant was charged with sexually battering his wife while she was drugged and unconscious. *Id.* at 450. At trial, the defendant argued the marital-defense

---

[3]The dissent, authored by Justice Kitchens, criticizes ***Trigg*** by citing ***Mullaney v. Wilbur***, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), wherein a Maine statute required a defendant to establish his affirmative defense by a preponderance of the evidence—a requirement which neither ***Trigg***, the trial court in the case *sub judice*, nor this Court has imposed on Burgess. Neither ***Trigg***, the trial court, nor we "saddle[d] [this] defendant" with the requirement to prove his affirmative defense. (Kitchens Dis. ¶¶ 63-64). The burden to prove all the elements beyond a reasonable doubt rested with and stayed with the State throughout.

exception of Section 97-3-99 exonerated him from criminal liability, because the State never alleged or proved force. *Id.* at 450-51. The court rejected the argument in a two-fold ruling. First, it held "force is not an element of sexual battery, rather it is an element necessary to establish the affirmative defense to a charge of sexual battery." *Id.* at 451. Second, the court held Section 97-3-99's affirmative defense of marriage "must be raised by the defendant; therefore, language concerning potential defenses does not belong in the indictment." *Id.* We hold that force is not an element of sexual battery.

¶21.    We further hold that marriage can be an affirmative defense to sexual battery, yet it is not an absolute defense. Once the defense of marriage is raised, it will apply, unless the State proves beyond a reasonable doubt that the two were separated or living apart at the time of the attack or that force was involved. *See generally* Miss. Code Ann. §§ 97-3-95, 97-3-99 (Rev. 2014). Proof of force negates the affirmative defense.

¶22.    Burgess specifically argues the instructions were error because they impermissibly amended the indictment, which they did not. Thus, this issue is without merit. The trial court did not err in approving jury instructions that included the requirement of force, since force (or the absence thereof) was an issued raised by the defendant. In asserting the affirmative defense of marriage, the defendant was not surprised, as the defendant introduced the issue. Once the defendant raised the defense, the jury was properly instructed to consider force.

II.    **Whether the trial judge erred by improperly limiting Burgess's voir dire.**

¶23.    "[V]oir dire is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Foster v. State*, 639 So. 2d 1263, 1274 (Miss.

10

1994). This Court requires a showing of "actual harm or prejudice" before we will reverse a trial court's limitation of voir dire. ***Morris v. State***, 843 So. 2d 676, 678 (Miss. 2003).

¶24.    During voir dire, defense counsel began a line of questioning regarding sex from a Biblical perspective:

> How many of you believe the Bible is the inerrant word of God because there are no errors? . . . Now when I ask that question, what I'm saying is that you believe in all the restrictions that the Bible puts upon us, that the Bible says are sins. Is that—is there anybody here that believes differently in terms of it being the inerrant word of God? (No responses). . . . [E]verybody that said that it was the inerrant word of God, it is your opinion that every law, restriction, whatever you may want to call it, is something we absolutely have to live by? Is that what—is there anybody here that believes differently?

After two jurors raised their hands, defense counsel continued:

> [H]ow many of you believe that there are—we have to follow every law, every restriction that the Bible imposes? (No responses). Well, let me get what I'm referring to. Leviticus, I believe it's Leviticus, and it talks about sexual sin. And if I'm not mistaken, it describes in so many words that it's sinful to have sex with a woman other than [vaginal intercourse]. For example, some would say that the Bible says it is sinful to have oral sex between spouses. Now, do you still—are those—are—are there those of you that believe that that is wrong, that that is a sin? (No response).

Neither the State nor the trial court lodged any objections to the line of questioning. Defense counsel continued:

> The Bible, if—if I understand it right, the Bible says, at least to most people, that that is a sin for a man and wife to have oral sex. Now probably three-fourths of you raised your hand and said the Bible is the inerrant word of God. Are all of you who raised your hands saying that it is sinful to have—for spouses to have oral sex?

¶25.    Finally, a prospective juror spoke up in objection:

> I'm not saying that—because I haven't read that particular passage. Without reading that and understanding that, I can't interpret that. That's your opinion.

11

I'm—I'm not saying—I do believe the Bible is the word of God and I do believe we should follow it. But that particular passage you're speaking of, I'm hearing that as your opinion. [Followed by what the court reporter described as "uncontrollable speaking."]

Defense counsel attempted to get control of the situation by narrowing the question to a discussion of "unnatural sex." Then a second juror responded:

Prospective Juror: I just would like to not answer your question. I don't think that your line of questioning has anything to do with it. I have my beliefs and I'm not here to discuss the Bible with you.

Defense Counsel: So you're refusing to answer the question? Is that right?

Prospective Juror: Yes.

At this point the trial court intervened, informing defense counsel:

You can state anything you want on the record, but I don't think that's an appropriate question. . . . Now if you want to ask them whether or not you believe if the law allows for it or if the law doesn't allow for it, you know, you can ask them questions about the law, whether they can follow the law and those sorts of things relative to sexual conduct. But I don't believe it's appropriate for you to ask them and you're not going to ask them any more questions about their religious beliefs and sexual conduct.

The court instructed defense counsel he could ask about morals and religious beliefs, but his questions had to be crafted for the purposes of determining whether jurors would be able to be fair and impartial. Defense counsel then asked the following question:

In this case, there will be testimony that there had been vaginal sex, oral sex, and [anal] sex. Now with respect to anal and vaginal sex, is there anyone here believe[s] that if that should occur whether—lets just assume it was consensual, all right, is there anyone here that would believe that if there was anal sex or vaginal sex that that was wrong?

12

At that point a juror spoke up because he had become confused with defense counsel's line of questioning. He was unsure whether the question still related to Biblical interpretation of unnatural sex and whether he was going to be asked to apply Biblical law or Mississippi law to the case. The Court then informed the juror it would instruct the juror on the law to follow and the juror said he could apply the law as instructed to the evidence.

¶26. Ultimately, the trial court offered defense counsel an opportunity to inquire into the jurors' potential prejudices in a less obtrusive way:

| The Court: | You can even ask [the venire] "would it prevent—would you feel that way, because of your religious or moral reason, do you believe that anyone that has anal intercourse is doing something wrong?" . . . My point is, I don't believe that you should be able to ask them whether or not they have certain religious beliefs and to explain or to justify why they have them. You simply need to know whether or not they have the belief that anybody that has anal intercourse is doing something wrong; whether or not anybody that has oral sexual intercourse is doing something wrong. That's the question you need to ask. |
|---|---|
| Defense Counsel: | I thought that's what I was asking. |
| The Court: | No, sir. . . . That's not the question that you asked and based upon the series of questions that you asked, you saw from that last response up here they were all tying it back to what the Bible says. . . . Don't base it on religious reasons. Don't ask them to explain. . . . [T]hat's not the way those questions should have been [asked] and it was embarrassing to the jury and I'm not going to allow you to do that. So you can rephrase your questions and I believe you can get to the same spot. |

Defense counsel followed up by questioning the jury whether anyone had moral objections to consensual anal sex between spouses.

13

¶27. Burgess now argues the trial court improperly limited his voir dire. We find the court's actions were within its discretion, designed to satisfy the dual goals of maintaining control of and clarity amongst the venire while at the same time ensuring the seating of a fair and impartial jury. The court repeatedly stressed that jurors must be fair and impartial and must base their decisions only on the evidence presented and the law on which they were instructed. Wide latitude is granted attorneys during voir dire, but it is not without limits. Neither the trial court's actions nor the defendant's arguments on appeal demonstrate "actual harm or prejudice" "result[ing] from the circuit court's handling of voir dire." *Keller v. State*, 138 So. 3d 817, 843 (Miss. 2014); *Morris*, 843 So. 2d at 678.

### III. Whether the trial judge erred by denying Burgess's challenges of certain jurors for cause.

¶28. "[T]he determination of whether a juror is fair and impartial is a judicial question, and will not be set aside unless such determination is clearly wrong." *Taylor v. State*, 672 So. 2d 1246, 1264 (Miss. 1996). Before a claim related to a denial of a challenge for cause may be valid, (1) the defendant must have exhausted all of his peremptory challenges and (2) an incompetent juror must be forced by the trial court's erroneous ruling to sit on the jury. *Christmas v. State*, 10 So. 3d 413, 423 (Miss. 2009).

¶29. Burgess claims four jurors were eligible to be struck for cause, but only one of those jurors sat on the empaneled jury.[4] Regarding these jurors, defense counsel elicited testimony

---

[4]Defense counsel used peremptory challenges to strike Jurors 1 and 19. The jury was seated before Juror 69's number was called for deliberation. The only juror Burgess claims should have been struck who actually sat on the jury because counsel had exhausted his peremptory challenges was Juror 21.

14

from them regarding whether they would tend to believe two of the State's proposed witnesses because of some extrajudicial relationship with them. All four said they would probably believe that witness over someone they did not know. However, counsel never asked them followup questions to determine if they would be able to set aside those relationships and consider the witness's testimony just the same as the other witnesses. Therefore, the court ruled defense counsel failed to lay the foundation for a strike for cause.[5] We agree with the trial court.

### IV. Whether the trial judge erred by excluding evidence of S.B.'s prior sexual acts with Burgess.

¶30. This Court reviews a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *See **Whitaker v. State***, 146 So. 3d 333, 336 (Miss. 2014); ***Smith v. State***, 986 So. 2d 290, 295 (Miss. 2008).

¶31. At trial, defense counsel sought to cross-examine the victim (S.B.) about her prior sexual relationship with Burgess. This included evidence that Burgess and S.B. had engaged in prior anal and oral sex and that the victim "had numerous high heels and lingerie, and that she would wear those while having sex." The State argued, and the trial court agreed, that the evidence was inadmissible pursuant to Mississippi Rule of Evidence 412(c), which requires a defendant to give the State prior notice of his intention to admit such evidence. Burgess argues this was error because he was not attempting to introduce evidence of

---

[5]The two witnesses at issue could have been called to testify regarding the defendant's taped confession only if it were contested. Further, neither of the two proposed witnesses ever testified at trial. Although they were on the State's witness list, they were never called to the stand. Regardless of whether the juror would tend to believe them or not, the issue is moot; there was no testimony for the juror to believe or disbelieve.

reputation, opinion, or specific acts. Defense counsel misreads and/or misapplies the rules of evidence.

¶32. Mississippi Rule of Evidence 412(a) reads: "Notwithstanding any other provision of law, in a criminal case in which a person is accused of a sexual offense against another person, reputation or opinion evidence of the past sexual behavior of an alleged victim of such sexual offense is not admissible." The purpose of Rule 412 is "to prevent the introduction of irrelevant evidence of the victim's past sexual behavior to confuse and inflame the jury into trying the victim rather than the defendant." ***Hughes v. State***, 735 So. 2d 238, 273 (Miss. 1999). Pursuant to Rule 412(a), "reputation or opinion evidence of past sexual behavior" is inadmissible in criminal cases involving sexual offenses.

¶33. The admissibility of specific instances of past conduct, *i.e.*, evidence other than reputation and opinion, is controlled by Mississippi Rules of Evidence 412(b) and (c). Pursuant to Rule 412(b), past sexual behavior between a victim and the accused may be admissible, provided that the evidence is being introduced specifically for one of three purposes: (1) to show that someone else was the source of semen, pregnancy, disease, or injury; (2) to show consent; or (3) to show false allegations of past sexual offenses made by the victim. Evidence admitted pursuant to Rule 412(b) is limited to evidence of specific instances of conduct.

¶34. Before such specific incidences are admissible, Rule 412(c) requires the defendant to submit a written motion no later than fifteen days before trial, complete with a written narrative of the offer of proof. Burgess failed to submit the motion or the narrative of proof.

16

It is proper to prevent impeachment of a victim of a sexual offense when the defendant failed to follow the notice and disclosure procedure of Rule 412(c). *See Cage v. State*, 149 So. 3d 1038, 1045-46 (Miss. 2014); *Aguilar v. State*, 955 So. 2d 386, 393 (Miss. Ct. App. 2006). As such, the trial court did not abuse its discretion in refusing to allow Burgess to question the victim about specific instances of past sexual conduct when Burgess failed to follow the notice and disclosure procedure required by Rule 412(b) and (c).[6]

### V. Whether the trial judge erred by denying Burgess's motions for directed verdict, peremptory instructions, JNOV, and new trial.

¶35.    Motions for a directed verdict and JNOV "challenge the legal sufficiency of the evidence." *Jenkins v. State*, 131 So. 3d 544, 551 (Miss. 2013) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)). The standard of review for whether a peremptory instruction should be granted is the same as the standard for a directed verdict. *See Easter v. State*, 878 So. 2d 10, 21 (Miss. 2004). In reviewing the sufficiency of the evidence, all of the evidence must be considered in the light most favorable to the verdict, giving the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987). The only evidence presented to the trial court for consideration was that offered by the State.[7] "We may reverse only where,

---

[6]Defense counsel argues he was not attempting to introduce specific instances of past sexual conduct and was therefore outside the purview of the notice provision in Rule 412(c). However, under the rules, it is either one or the other—(1) reputation and opinion or (2) specific instances. Reputation and opinion are never admissible. M.R.E. 412(a). Evidence of specific instances may be admissible under certain circumstances if the  defendant provides the requisite notice. Burgess did not.

[7] While the State called multiple witnesses, the testimony of the victim of a sex crime, even if uncorroborated, is sufficient to support a conviction where it is "consistent with the

17

with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." *Id.* No evidence was presented that could lead a fair-minded juror to find Burgess not guilty. Therefore, this issue is without merit.

### VI.     Whether the trial judge erred by giving a flight instruction.

¶36.    This Court reviews the giving of jury instructions for an abuse of discretion. *Drummer v. State*, 167 So. 3d 1180, 1187 (Miss. 2015). Flight is a circumstance from which an inference of guilt may be drawn and considered along with all the other facts and circumstances connected to the case. *Randolph v. State*, 852 So. 2d 547, 564 (Miss. 2002).[8]

¶37.    The argument advanced by the defendant is belied by his own words:

> And then when I got to my street I saw three deputy cars at my house. So—but I was thinking that—*I was thinking that they were there because I had—like [the process server] said, ticked my wife of and she had made divorce—like made it from divorce papers and stuff to charges.* That is what I honestly believed. . . . So I just—instead of turning down my street and continuing on, I turned down my street and just made a loop—like looped around. And then I saw one of the deputies backing out. No blue lights or anything. *But I figured, well, if they didn't see me, then I can go—get away—like get out of here* and then I'd come back.

The defendant testified that his flight was to get away, a textbook example of when a flight instruction is proper. *See generally* **Drummer**, 167 So. 3d at 1187-90. Burgess admitted he fled for one reason only: to avoid being arrested for sexually battering S.B. Therefore, the trial court did not abuse its discretion in giving a flight instruction.

circumstances." *Goss v. State*, 465 So. 2d 1079, 1082 (Miss. 1985).

[8]For a history of this Court's treatment and approval of flight instructions, see *Drummer*, 167 So. 3d at 1187-90.

## VII. Whether the trial judge erred by admitting letters into evidence at sentencing.

¶38. During sentencing, the State sought to admit into evidence fourteen letters which were sent to the trial court regarding Burgess's sentence: four from S.B. and her family,[9] four from S.B.'s coworkers, two from S.B.'s friends,[10] three from J.Y.[11] and her family,[12] and one from J.Y.'s friend.[13] Burgess argues these letters violated his Sixth Amendment right to confrontation, the evidentiary rules against hearsay, and the rules of discovery.[14]

¶39. A trial judge sitting without a jury has broad discretion in the things he considers and "may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come." *Evans v. State*, 547

---

[9]The letters from S.B. and her family speak to the evidence introduced at trial: that Burgess abused drugs and alcohol, threatened to leave the children "motherless," and caused S.B. to suffer emotionally and financially as a result of the attack.

[10]The letters from S.B.'s friends and coworkers speak primarily to the impact of the attack on S.B. and her children, and not to Burgess's conduct.

[11]J.Y. was the victim in a separate attack by Burgess that occurred four days after the attack on S.B. and her family, and that also occurred in the presence of a child, J.Y.'s daughter. The trial court agreed to consider the J.Y. evidence pursuant to *Sumrall v. State*, 734 So. 2d 242 (Miss. Ct. App. 1999) (allowing the State to introduce at sentencing evidence of aggravation of the offense of which the defendant has been convicted).

[12]The letters from J.Y. and her family speak to the evidence presented in that case: that Burgess attacked J.Y. with a knife outside her home and attempted to kidnap her while J.Y.'s infant daughter was strapped inside a hot car.

[13]The letter from J.Y.'s friend reiterated Burgess's admitted drug use and possible future harm to J.Y. and S.B., and expressed hope that Burgess would "come to know the Lord."

[14]The State provided the letters to Burgess a few minutes prior to the sentencing proceeding. The letters were dated between April 2 and 5. Sentencing began on April 11. There is no evidence of when the State received the letters.

So. 2d 38, 41 (Miss. 1989). "The imposition of a sentence is within the discretion of the trial court, and this Court will not review the sentence, if it is within the limits prescribed by statute." ***Reynolds v. State***, 585 So. 2d 753, 756 (Miss. 1991).

¶40.    Victim-impact evidence is admissible at sentencing. *See* ***Payne v. Tennessee***, 501 U.S. 808, 825, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991) ("We are now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant."). This Court adopted the ***Payne*** holding in ***Hansen v. State***, noting "A state may legitimately conclude that evidence about the victim and about the impact of the [crime] on the victim's family is relevant to the jury's decision as to whether or not the [sentence] should be imposed." ***Hansen v. State***, 592 So. 2d 114, 146 (Miss. 1991). *See also* Miss. Code Ann. § 99-19-157(2)(b) (Rev. 2015) ("[T]he victim or victim representative may . . . submit a victim impact statement [by] submit[ting] a written statement to the prosecuting attorney, who shall present such statement to the trial judge prior to sentencing.").

¶41.    As to the issue of hearsay, "the Rules of Evidence do not apply to sentencing hearings." ***Wilson v. State***, 21 So. 3d 572, 587-88 (Miss. 2009). *See also* M.R.E. 1101(b)(3). As to discovery violations, this Court reviews a trial judge's discovery rulings for an abuse of discretion, and will reverse only where there is a showing of prejudice and the nondisclosed material must be more than simply "cumulative." ***Conley v. State***, 790 So. 2d 773, 782 (Miss. 2001); ***Prewitt v. State***, 755 So. 2d 537, 541 (Miss. 1999). The sentence

20

imposed was within the statutory guidelines, and the content of the letters was merely cumulative of the evidence presented at trial. Thus, Burgess's argument that the letters violated the rules against hearsay and the rules of discovery is without merit.

¶42.   The U.S. Supreme Court has held that the Confrontation Clause does not apply during the sentencing process. **Williams v. Oklahoma**, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). Even post-**Crawford**, "the federal circuit courts continue to apply **Williams** and do not recognize a right to confrontation during sentencing proceedings." **Conner v. State**, 138 So. 3d 143, 152 (Miss. 2014). While this Court has applied the Confrontation Clause to jury sentencing,[15] no such extension has been made to sentencing before a trial judge. *See **id.***

¶43.   We find Burgess failed to explain how the letters prejudiced the court into imposing a greater sentence, in light of the trial judge's on-the-record finding that he did not need the letters in order to impose the maximum sentence. According to the trial court, "[B]asically, my sentence is going to be based upon what I heard at trial." The court noted it had the discretion to go outside the record when considering a possible sentence. However, while agreeing to admit the letters, the court saw no real need to consider them:

> [W]ith that having been said, I really don't have to go outside the record in this case to impose a sentence. Statements were made about no threats of harm to the children. It's hard for me to consider that as being true when the children, according to the testimony, were asleep in the house while this quite violent sexual attack went on against their mother and the threat to her was that "if you don't comply, you're going to have three motherless children here." I don't know what could be more harmful to children than to have their mother killed right there in the house with them . . . . But, in any event, as I've stated, the

---

[15]*See **Pitchford v. State***, 45 So. 3d 216, 252 (Miss. 2010).

record in this case is quite clear. The testimony that the jury accepted upon which this Defendant was found guilty of three counts of sexual battery was of the most violent and egregious conduct that I think could be committed under the statute.

¶44. The letters were admissible at sentencing because this case involved sentencing by a judge, not a jury, so Burgess's right to confrontation was not violated. The sentence was within the judge's discretion and the statutory guidelines. Further, the evidence contained in the letters was merely cumulative of that presented at trial, and the trial judge explained how he could impose the maximum sentence without even considering the letters. This issue is without merit.

### VIII. Whether the trial judge erred by admitting a redacted text message into evidence.

¶45. Burgess claims the State should not have been allowed to introduce a text message Burgess sent to the victim three days after the attack. In it, Burgess stated: "Will you at least text me something? I'm guess [sic] I'm waiting on either charges and me picked up or nasty divorce papers. You took me off Facebook[.]"[16] Burgess claims these messages were not proper evidence on redirect and that the trial court failed to make an on-the-record determination of admissibility.[17]

---

[16]The remainder of the text chain was redacted from the version presented to the jury pursuant to a motion to suppress.

[17]This aspect of Burgess's argument is factually flawed. On page 387 of the trial transcript, the court specifically stated the text message would tend to negate Burgess's claim at trial that S.B. filed these charges in order to gain an advantage in the divorce. The judge then went on to say "I don't find that under these circumstances that the probative value is outweighed by the prejudicial effect and based upon the cross-examination that it's appropriate redirect."

22

¶46. This Court reviews a trial court's decision to admit or exclude evidence under an abuse-of discretion-standard. *See Whitaker*, 146 So. 3d at 336; *Smith*, 986 So. 2d at 295.

¶47. During cross-examination of S.B., defense counsel elicited testimony regarding the amount of money and property S.B. had received in the divorce judgment as motive for her filing the charges in this case. On redirect, the State sought to introduce the text message to rebut the defense's allegations. The message was sent the day S.B. filed formal charges and the day before Burgess was served with the divorce papers. The State argued introducing the text message would show that, even before being charged with sexual battery, and even before being served with divorce papers, Burgess believed criminal charges were forthcoming (thereby acknowledging the attack actually occurred).

¶48. The court weighed the evidence, found it would tend to rebut the allegations of bias or motive, and held the probative value of the text was not outweighed by its prejudicial effect on the defendant. The trial court did not abuse its discretion in admitting the redacted text message.

<u>CONCLUSION</u>

¶49. Based on the above analysis, we find Burgess's issues are without merit and affirm the judgment and sentence of the Rankin County Circuit Court.

¶50. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES IN COUNT I, COUNT II, AND COUNT III SHALL RUN**

CONCURRENTLY. APPELLANT IS TO REGISTER AS A SEX OFFENDER. APPELLANT SHALL PAY COURT COSTS, FEES AND ASSESSMENTS IN THE AMOUNT OF $421.50 WITHIN SIX (6) MONTHS IF EVER RELEASED FROM CUSTODY. APPELLANT SHALL HAVE NO CONTACT WITH THE VICTIMS. APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED IN PRETRIAL DETAINMENT.

WALLER, C.J., CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:

¶51.  I agree with the result reached by the majority and with most of the analysis, but I write separately to address the sixth issue raised by Burgess on appeal—whether the trial judge erred by giving a flight instruction.

¶52.  Flight instructions have been characterized by this Court as "dangerous," and consequently we rarely have held such instructions to have been properly given.[18]  For two reasons, I disapprove of flight instructions altogether.

¶53.  First, whatever evidence there is of "flight" will be before the jury—with or without the flight instruction—and juries are instructed (or should be) that they are allowed to make reasonable inferences from the evidence.  To follow that up with a flight instruction—calling special attention to a particular inference that one side would like to jury to make—is, in my

---

[18] *See Ervin v. State*, 136 So. 3d 1053, 1060 (Miss. 2014); *Randolph v. State*, 852 So. 2d 547 (Miss. 2002); *Banks v. State*, 631 So. 2d 748 (Miss. 1994); *Fuselier v. State*, 468 So. 2d 45 (Miss. 1985); *Pannell v. State*, 455 So. 2d 785, 789 (Miss. 1984); *Craft v. State*, 271 So. 2d 735 (Miss. 1973); *Quarles v. State*, 199 So. 2d 58 (Miss. 1967); *Eubanks v. State*, 227 Miss. 162, 85 So. 2d 805 (1956).

view, unfair. Flight instructions tell juries they may infer "guilty knowledge" from flight. Let us not kid ourselves—"guilty knowledge" means guilt. No innocent person has "guilty knowledge." So, in reality, flight instructions tell juries that they may infer the defendant is guilty from the evidence of flight.

¶54. We do not allow trial judges, through their instructions, to single out much more reliable evidence than "flight." For instance, what about fingerprints, DNA, blood samples, and eyewitness testimony? Would the majority approve a trial judge telling the jurors that, if the defendant's fingerprints are on the gun, they may infer guilt? The truth is, the words presume, assume, and infer are synonyms, so flight instructions tell the jury that "if there is evidence of flight, you may presume the defendant is guilty." This concept should be troubling to my learned colleagues in the majority who often are heard to speak eloquently about what I believe to be sincere concerns for "fair trials." But in our quest to assure everyone a fair trial, I wonder if the justices who support flight instructions for the State also would support a parallel instruction for defendants, that is, that the jury may infer innocence from the failure to flee?

¶55. Also, I oppose these cleverly disguised preemptive instructions because—as opined by this Court in days gone by—innocent people could, and often do, choose to flee the scene of a crime for a plethora of legitimate reasons.[19] As I have said before, the days of careful

---

[19] *See **Howard v. State***, 182 Miss. 27, 181 So. 525 (1938).

judicial scrutiny on such issues as speedy trials[20]—to ensure equal justice for defendants, as well as the State—have long-since passed.

¶56.    In sum, I believe that flight instructions diminish the fairness of the trials in which they are given. They skew the criminal justice system toward the prosecution, suggesting to the jury that a certain character of evidence (evidence of "flight") overcomes the presumption of innocence and allows the jury to presume guilt.

¶57.    So I echo Justice Kitchens in his separate opinion in *Drummer v. State*,[21] and call for the abolition of the flight instruction altogether.[22] Accordingly, I believe the trial judge erred by giving a flight instruction in this case.

¶58.    That being said, I do not believe the instruction amounted to reversible error here because—as made abundantly clear by the majority—the State presented more than sufficient evidence, apart from this erroneous flight instruction, to prove beyond a reasonable doubt that Burgess forcibly sexually assaulted his wife. So I concur in the result reached by the majority, but only in part with its reasoning.

---

[20] *See Newell v. State,* 2015 WL 6114608, at \*13 (Miss. 2015) (Dickinson, P.J., dissenting); *Taylor v. State*, 162 So. 3d 780, 788 (Miss. 2015) (Dickinson, P.J., dissenting); *Myers v. State*, 145 So. 3d 1143, 1152 (Miss. 2014) (Dickinson, P.J., dissenting); *Franklin v. State*, 136 So. 3d 1021, 1038 (Miss. 2014) (Dickinson, P.J., dissenting); *Johnson v. State*, 68 So. 3d 1239, 1247 (Miss. 2011) (Dickinson, P.J., dissenting).

[21] *Drummer v. State*, 167 So. 3d 1180, 1999 (Miss. 2015) (Kitchens, J., concurring in Part I and dissenting from Part II).

[22] *Id.*

**KITCHENS, JUSTICE, DISSENTING:**

¶59. The atrocious assaults that Casey Mark Burgess is accused of inflicting upon his wife are despicable, and he should stand trial for them if lawfully charged. But our Constitution remains unyielding, even in the face of apparent depravity. Because the indictment did not allege that Burgess and his wife were married to each other or that they were married but separated and living apart at the time he is said to have brutalized and sexually assaulted her, and because it did not allege that Burgess had engaged in forcible sexual penetration of his wife in the absence of her consent, I respectfully dissent from the majority's affirmance of his conviction.

¶60. Mississippi Code Section 97-3-95 provides that "[a] person is guilty of sexual battery if he or she engages in sexual penetration" with "[a]nother person without his or her consent . . . ." Miss. Code Ann. § 97-3-95 (Rev. 2014). In accordance with that statutory section, the first count of the indictment against Burgess alleged that he:

> did willfully, unlawfully, and intentionally engage in sexual penetration as defined by Mississippi Code Annotated § 97-3-97[23] with S.B., a female human being, by inserting his penis in S.B.'s vagina, without her consent, all within the jurisdiction of this court and in violation of Section 97-3-95(1)(a), Mississippi Code Annotated . . . .

Counts II and III alleged the same crime, but specified that Burgess had "inserted his penis in S.B's" anus and mouth, respectively.

¶61. However, Section 97-3-99 provides that:

---

[23] Section 97-3-97 defines "[s]exual penetration" as "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97 (Rev. 2014).

27

A person is not guilty of any offense under Sections 97-3-95 through 97-3-103 if the alleged victim is that person's legal spouse and at the time of the alleged offense such person and the alleged victim are not separated and living apart; provided, however, that the legal spouse of the alleged victim may be found guilty of sexual battery if the legal spouse engaged in forcible sexual penetration without the consent of the alleged victim.

Miss. Code Ann. § 97-3-99 (Rev. 2014). In the present case, Burgess's indictment contains no language alleging that S.B. was not Burgess's legal spouse, or that "at the time of the alleged offense," Burgess and S.B. were "separated and living apart." *Id.* No allegation was made in the indictment that Burgess "engaged in forcible sexual penetration without the consent of the alleged victim." *Id.* The jury instruction on the first count, however, required the jury to find, beyond a reasonable doubt, that Burgess did:

1. willfully, unlawfully, intentionally and *forcibly*;
2. engage in sexual penetration;
3. with [S.B.];
4. by inserting his penis in [S.B.'s] vagina;
5. without her consent . . . .

(Emphasis added.) The jury instruction for Counts II and III contained similar language, though it instructed the jury that, in order to convict, it had to find, beyond a reasonable doubt, that Burgess had "insert[ed] his penis in" S.B.'s anus and mouth, respectively.

¶62.    The majority—and the State—reference ***Trigg v. State***, 759 So. 2d 448 (Miss. Ct. App. 2000). In that case, the defendant was convicted of sexual battery against his wife. ***Id.*** at 450. The defendant, who had drugged his wife to render her unconscious, recorded on a videotape "orally and digitally penetrat[ing] her vagina while she was unconscious, without her knowledge or consent." ***Id.*** The defendant argued there, as the defendant argues here, that

28

the indictment under Section 97-3-95(1)(a) and (b)[24] was insufficient because it was impermissibly amended in the jury instructions to include an allegation of force under Section 97-3-99. *Id.* The Court of Appeals rejected the argument and affirmed the conviction, holding that "force is not an element of sexual battery, rather it is an *element necessary to establish the affirmative defense* to a charge of sexual battery." *Id.* at 451 (emphasis added). The Court of Appeals continued that "[a]ny relevant defense must be raised by the defendant; therefore, language concerning potential defenses does not belong in the indictment." *Id.* While deserving of our serious consideration, the Court of Appeals decision is not binding upon this Court.

¶63. In the context of a Maine statute which required "a defendant to establish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter," the United States Supreme Court held that "[u]nder this burden of proof a defendant can be given a life sentence when the evidence indicates that it is as likely as not that he deserves a significantly lesser sentence." *Mullaney v. Wilbur*, 421 U.S. 684, 703, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Finding that the "State has affirmatively shifted the burden of proof to the defendant," the Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* at 700, 704.

---

[24] Section 97-3-95(1)(b) criminalizes "sexual penetration" of "[a] mentally defective, mentally incapacitated or physically helpless person." Miss. Code Ann. § 97-3-95(1)(b) (Rev. 2014).

¶64. The Court of Appeals in *Trigg* and now today's majority saddle a defendant with the obligation to raise the affirmative defense of marriage found in Section 97-3-99. According to the majority, once the defendant has raised the affirmative defense of marriage, the State is obligated to rebut it with evidence beyond a reasonable doubt that the victim is the defendant's legal spouse "and at the time of the alleged offense such person and the alleged victim are not separated and living apart." Miss. Code Ann. § 97-3-99 (Rev. 2014). In the event that the alleged victim and the defendant are, in fact, legal spouses and, "at the time of the alleged offense such person and the alleged victim are not separated and living apart," the State must prove beyond a reasonable doubt that "the legal spouse engaged in forcible sexual penetration without the consent of the alleged victim." *Id.*

¶65. If the defendant should choose not to put on a defense, under the majority's reasoning, the State and the courts apparently would proceed under these facts and an indictment such as Burgess's in a legal fiction that the parties were not married. With respect, today's majority perpetuates the error of the *Trigg* court by impermissibly placing the burden on the defendant to prove that the defendant and the victim were married and were not separated in order to trigger the requirement that the State prove force beyond a reasonable doubt.

¶66. Moreover, I cannot agree that force "is an element necessary to establish the affirmative defense" of marriage under Section 97-3-99. *Trigg*, 759 So. 2d at 451. That simply is an incorrect interpretation of the law. Force is not an element necessary to establish the affirmative defense of marriage to a charge of sexual battery under Section 97-3-95. Rather, proof beyond a reasonable doubt of force is required when the victim is the

defendant's legal spouse "and at the time of the alleged offense such person and the alleged victim are not separated and living apart." Miss. Code Ann. § 97-3-99 (Rev. 2014).

¶67.    Uniform Rule of Circuit and County Practice 7.06 governs indictments: "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." URCCC 7.06. This requirement is grounded in "[t]he familiar constitutional right to notice of criminal charges . . . ." *Thomas v. State*, 126 So. 3d 877, 879 (Miss. 2013) (citing U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."); Miss. Const. art. 3, § 26 ("In all criminal prosecutions the accused shall have a right . . . to demand the nature and cause of the accusation.")).

¶68.    "An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Thomas*, 126 So. 3d at 879. Further,

> It has long been the law of this land that an accused person has a constitutional right to be informed of the nature and material elements of the accusation filed against him. All the authorities are to the effect that an indictment, to be sufficient upon which a conviction may stand, must set forth the constituent elements of a criminal offense. Each and every material fact and essential ingredient of the offense must be with precision and certainty set forth.

*Thomas*, 126 So. 3d at 879 (quoting *Burchfield v. State*, 277 So. 2d 623, 625 (1973)). "Repeatedly this Court has held that an indictment based upon a statutory offense must charge all of the essential elements of the statutory crime and is void for failure to do so." *Thomas*, 126 So. 3d at 879 (quoting *Spears v. State*, 253 Miss. 108, 116, 175 So. 2d 158,

161-62 (1965)). Where the indictment fails to charge the defendant "with an essential element of the crime, it is void for its failure to have done so." ***Thomas***, 126 So. 3d at 880.

¶69. The indictment in the present case failed to allege force, an essential element of the crime of sexual battery under Sections 97-3-95 and 97-3-99 where, as here, the victim was the defendant's legal spouse "and at the time of the alleged offense such person and the alleged victim are not separated and living apart." The State had a duty to investigate the case fully, including the parties' status respecting each other, before presenting the case to the grand jury, then to draft an indictment that reflected that status and the element of force.

¶70. The State complains that Burgess "hid the fact that he intended to use the marital exception defense until such time as the State rested its case. Appellant cannot use this hidden defense to form [sic] basis of an argument that the State's indictment was deficient." Also, according to the State, while Burgess "elicited testimony from S.B. showing that she and Appellant were married and living together at the time of the battery," he "kept silent with regards [sic] to notifying the State, and the trial court, of his intent to raise the defense until such time as the State rested--thereby affording Appellant a seemingly foolproof opportunity to cry foul in regards [sic] to the indictment."

¶71. The record belies this argument altogether. The State was on notice from the beginning that the parties were married. In the State's opening statement it referred to the "marital home" and indicated that Burgess and S.B. had celebrated their twelfth anniversary the day before Burgess's "binge" which ostensibly led to the sexual battery. The prosecutor used the word "force" no fewer than eleven times during his opening statement, and

32

referenced force during his direct examination of S.B. It cannot be said that the State had no notice that the parties were married, and that it would be obligated to prove force, prior to Burgess's motion for a directed verdict. The State's suggestion that Burgess concealed or hid the use of the marital-exception defense is not accurate, for the State clearly was on notice that the parties were, in fact, married and not separated at the time the sexual battery occurred. In any case in which the State has alleged sexual battery and the alleged defendant and the victim are married and not separated, or the State has reason to know that the alleged defendant and the victim are married and not separated, the State is obligated to assume that the affirmative defense of marriage will be raised by the defense and to allege force in the indictment as an element of the crime.

¶72. Moreover, the State's argument suggests that the *defense* is obligated to disclose and to provide notice to the State that it plans to assert the affirmative defense of marriage under Section 97-3-99 in a case in which sexual battery is alleged pursuant to Section 97-3-95. That, too, is not correct. The only two defenses of which a defendant is required to provide notice to the State are those of alibi and insanity. Rule 9.05 of the Uniform Rules of Circuit and County Practice provides that "the defendant shall serve within ten days, or at such other time as the court may direct, upon the prosecuting attorney a written notice of the intention to offer a defense of alibi . . . ." URCCC 9.05. Likewise, Rule 9.07 of the Uniform Rules of Circuit and County Practice provides that:

> If a defendant intends to rely upon the defense of insanity at the time of the alleged crime, the defendant shall, within the time provided for filing pretrial motions or at such later time as the court may direct, serve upon the

33

> prosecuting attorney and the clerk of the court a written notice of the intention to offer a defense of insanity.

URCCC 9.07. The defendant was not required by any law, rule, or judicial decision to put the State on notice that he intended to raise marriage as an affirmative defense to the charges of sexual battery.

¶73.    Because the indictment in the present case did not allege properly the status of the parties and the essential element of force, it was void, and I respectfully dissent.