# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00778-COA

DARWIN MARQUEL WELLS, JR. A/K/A                                    APPELLANT
DARWIN MARQUEL WELLS

v.

STATE OF MISSISSIPPI                                               APPELLEE

DATE OF JUDGMENT:              05/14/2018
TRIAL JUDGE:                   HON. DALE HARKEY
COURT FROM WHICH APPEALED:     JACKSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: STACY L. FERRARO
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: SCOTT STUART
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED - 02/25/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     In 2009, Darwin Wells was convicted of deliberate design murder and sentenced to

life imprisonment. By statute, he is ineligible for parole. Miss. Code Ann. § 47-7-3(1)(f)

(Supp. 2019). Following the United States Supreme Court's decision in *Miller v. Alabama*,

567 U.S. 460 (2012),[1] Wells filed a motion for post-conviction relief in which he sought to

---

[1] In *Miller*, the United States Supreme Court held "that *mandatory* life without parole
for those under the age of 18 at the time of their crimes violates the Eighth Amendment's
prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465 (emphasis added).
"*Miller* does not prohibit sentences of life without parole." *Parker v. State*, 119 So. 3d 987,
995 (¶19) (Miss. 2013). But it does require the sentencing authority to take into account
"several factors" related to the offender's age before imposing such a sentence. *Id.*

be resentenced to a term of life imprisonment with eligibility for parole. Following an evidentiary hearing, the circuit court ruled that Wells was not entitled to relief under *Miller*. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. This Court summarized the basic facts of Wells's crime when we affirmed his conviction and sentence on direct appeal:

> On October 23, 2008, Michael and Linda Porter began traveling from Forrest County to Jackson County to watch Linda's grandson play in a football game. Michael and Linda traveled down Highway 49, took Interstate 10, and ended up on Highway 63. While traveling down Highway 63, Michael and Linda decided to stop at a Conoco station and ask for directions to the football stadium. Michael pulled into the Conoco station, got out of the vehicle, and began to walk toward the service station. Linda . . . noticed three young African American men standing in front of her vehicle. . . . [O]ne of the men [(Wells)] had a white towel draped over his head. . . . [A]s Michael was returning to the vehicle, two of the men attacked him. . . . [Wells] was not involved in the struggle at that time. . . . Michael finally broke free of the men, entered his car, and shut the door. Then, Linda . . . saw [Wells] walking toward the car. Linda stated that she saw [Wells] pull out a gun and shoot Michael. . . . [B]ecause Michael had the car in gear, the car shot . . . forward down the road after he was shot. Linda . . . attempted to manage the car, eventually running the vehicle into a ditch. She then ran to a house and sought help. Ultimately, Michael died from his injuries.

*Wells v. State*, 73 So. 3d 1203, 1204-05 (¶2) (Miss. Ct. App. 2011) (footnote omitted). Wells was indicted for capital murder. *Id.* at 1205 (¶3). Following a jury trial, he was convicted of deliberate design murder and sentenced to life imprisonment. *Id.* at (¶4); Miss. Code Ann. §§ 97-3-19(1)(a) & -21 (Rev. 2006). By law, he is ineligible for parole. Miss. Code Ann. § 47-7-3(1)(f).

¶3. In 2013, Wells filed an application in the Mississippi Supreme Court for leave to file

2

a motion for post-conviction relief under *Miller*, *supra*. The Supreme Court granted Wells leave to proceed in the circuit court, and Wells then filed a motion for post-conviction relief in the circuit court. Ultimately, following an evidentiary hearing, the circuit court ruled that Wells was not entitled to relief under *Miller* and, therefore, that his sentence of life without eligibility for parole would stand. Wells appealed.

## ANALYSIS

¶4. Wells advances a number of arguments on appeal, which may be summarized as follows: (1) that he is entitled to a new sentencing hearing because disciplinary reports and other records from the Mississippi Department of Corrections and the Jackson County Adult Detention Center were admitted into evidence in violation of the Confrontation Clause; (2) that the circuit court failed to comply with *Miller* and violated due process by not making a specific finding that he is "permanently incorrigible"; (3) that he has a constitutional right to have a jury determine whether he is "permanently incorrigible"; (4) that a sentence of life without parole violates the Eighth Amendment to the United States Constitution and Article 3, Section 28 of the Mississippi Constitution in all cases in which the defendant was under the age of eighteen at the time of the offense; and (5) that the circuit court misapplied *Miller* or abused its discretion in resentencing him to a term of life without parole.

¶5. In a series of recent decisions, this Mississippi Supreme Court and this Court have rejected arguments (2), (3), and (4).[2] Therefore, those arguments require no new discussion

---

[2] *See generally McGilberry v. State*, No. 2017-CT-00716-SCT, 2020 WL 372705, at *5-7 (¶¶25-32) (Miss. Jan. 23, 2020); *Wharton v. State*, No. 2017-CT-00441-SCT, 2019 WL 6605871, at *3-4 (¶¶19, 24) (Miss. Dec. 5, 2019); *Chandler v. State*, 242 So. 3d 65, 69 (¶15) (Miss. 2018), *cert. denied*, 139 S. Ct. 790 (2019); *Jones v. State*, 285 So. 3d 626, 631-

in this case.  We now address arguments (1) and (5).

> **I.    The circuit court's consideration of Wells's prison records did not violate the Confrontation Clause.**

¶6.    At Wells's evidentiary hearing in the circuit court, the State introduced Wells's disciplinary records from the Mississippi Department of Corrections (MDOC) and the Jackson County Adult Detention Center (JCADC) and a "Security Threat Group Participation Form" from MDOC.  The form stated that Wells admitted that he had been a member of a gang but also stated that he had been "smashed out" of the gang in 2012 and no longer participated in gang activities.  Wells objected to these records on multiple grounds, including the "Confrontation Clause," but the circuit court overruled Wells's objections and considered the records in its ruling.  On appeal, Wells argues that the court's ruling violated his rights under the Confrontation Clause of both the Federal Constitution, U.S. Const. amend. VI, and the Mississippi Constitution, Miss. Const. art. 3, § 26.  This argument is without merit because (1) the constitutional right of confrontation does not extend to a non-jury *Miller* hearing, and (2) the records at issue are not "testimonial."

> **A.    The Confrontation Clause does not apply to a non-jury *Miller* hearing.**

¶7.    The Confrontation Clause of the Sixth Amendment to the Federal Constitution does not apply during the sentencing process.  *United States v. Dinh*, 920 F.3d 307, 312 (5th Cir. 2019) ("[I]t has long been established by the Supreme Court that defendants do not have a

---

32 (¶¶14-17) (Miss. Ct. App. 2017), *cert. granted*, 250 So. 3d 1269 (Miss. 2018), *cert. dismissed*, No. 2015-CT-00899-SCT (Miss. Nov. 29, 2018), *petition for cert. filed*, No. 18-1259 (U.S. Mar. 29, 2019); *Cook v. State*, 242 So. 3d 865, 876-78 (¶¶38-40, 45) (Miss. Ct. App. 2017), *cert. denied*, 237 So. 2d 1269 (Miss. 2018), *cert. denied*, 139 S. Ct. 787 (2019).

constitutional right of confrontation or cross-examination at the sentencing phase." (citing

*Williams v. Oklahoma*, 358 U.S. 576, 584 (1959); *Williams v. New York*, 337 U.S. 241, 246-

51 (1949))); *Conner v. State*, 138 So. 3d 143, 152 (¶26) (Miss. 2014) ("The Supreme Court

of the United States has held that the Confrontation Clause does not apply during the

sentencing process." (citing *Williams v. Oklahoma* and *Williams v. New York*)). Therefore,

the circuit court's consideration of prison records clearly did not violate Wells's rights under

the Sixth Amendment to the Federal Constitution.

¶8.     The Mississippi Supreme Court has held that a defendant has a right to confront the

witnesses against him at a sentencing hearing *before a jury*. *Burgess v. State*, 178 So. 3d

1266, 1280 (¶42) (Miss. 2015) (citing *Pitchford v. State*, 45 So. 3d 216, 252 (¶161) (Miss.

2010)).[3]  However, "no such extension has been made to a sentencing before a trial judge."

*Id*.  Rather, our Supreme Court has held that a defendant has no right of confrontation at a

non-jury sentencing.  *Id.* at 1281 (¶44).  Wells was resentenced by a judge, not a jury.  Thus,

Wells had no right of confrontation at his hearing.  *Id.*[4]

---

[3] Presumably this holding rests on the Mississippi Constitution.  "[A] state court is entirely free to read its own State's constitution more broadly than [the United States Supreme] Court reads the Federal Constitution . . . ."  *City of Mesquite v. Aladdin's Castle Inc.*, 455 U.S. 283, 293 (1982).  However, state courts are bound by the United States Supreme Court's interpretations of the Federal Constitution. *Arkansas v. Sullivan*, 532 U.S. 769, 772 (2001); *Oregon v. Hass*, 420 U.S. 714, 719 (1975).

[4] The circuit court entered an agreed order vacating Wells's original sentence and reinstating the case to the active docket for a new "sentencing hearing."  Our Supreme Court subsequently held "that it is error for our trial courts to vacate a juvenile's original life-without-parole sentence . . . before conducting a *Miller* hearing."  *Wharton*, 2019 WL 6605871, at *5 (¶29).  Under *Wharton*, Wells was entitled to a post-conviction collateral "*Miller* hearing"—not a "new sentencing hearing."  *Id.*; *accord McGilberry*, 2020 WL 372705, at *6 (¶29).  The Confrontation Clause does not apply to collateral post-conviction

## B. The prison records are not testimonial.

¶9. Under both the Federal Constitution and the Mississippi Constitution, the right of confrontation "only applies to statements that are 'testimonial.'" *Corbin v. State*, 74 So. 3d 333, 338 (¶13) (Miss. 2011) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Indeed, "a statement cannot fall within the Confrontation Clause unless its *primary purpose* was testimonial." *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) (emphasis added). "To rank as 'testimonial,' a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution." *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011) (quotation marks and brackets omitted). Thus, most business records and public records "are *not testimonial*" because they "hav[e] been *created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial*." *Birkhead v. State*, 57 So. 3d 1223, 1234-35 (¶38) (Miss. 2011) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)).

¶10. The disciplinary records at issue in this case are not testimonial. The records consist of numerous "incident reports" made by correctional officers over the course of Wells's incarceration. The JCADC reports simply state the type of infraction at issue (e.g., "contraband," "assault on staff," or "refusing to promptly obey an order"), the result of any disciplinary hearing, and any discipline imposed. Some reports note that Wells admitted to the infraction or briefly summarize the administrative decision. The JCADC records do not

---

proceedings. *E.g.*, *Oken v. Warden*, 233 F.3d 86, 93 (1st Cir. 2000); *Leisure v. State*, 828 S.W.2d 872, 878 (Mo. 1992). However, we have given Wells's claim the benefit of the doubt and addressed it on the assumption that his *Miller* hearing should be considered a sentencing hearing for purposes of analysis under the Confrontation Clause.

include any significant narrative descriptions of the incidents. Some of the MDOC records do contain brief narrative descriptions. However, there is nothing to indicate that any of the reports were made or recorded for the primary purpose of proving facts in a criminal prosecution. Rather, the apparent purpose of all of the reports is to record incidents and disciplinary actions for purposes of prison administration. Accordingly, the reports are not testimonial in nature, which means that the Confrontation Clause does not apply. *State v. Raines*, 653 S.E.2d 126, 137 (N.C. 2007) (holding that "detention center incident reports" were not testimonial because they "were created as internal documents concerning administration of the detention center" and "were not taken in such a manner as to be testimonial or to be used during later criminal proceedings").[5]

¶11. The same is true of the "Security Threat Group Participation Form" that recorded Wells's (self-admitted) involvement in a gang. There is nothing to suggest that MDOC created the form to use against Wells in any criminal proceeding. Therefore, its admission at Wells's *Miller* hearing did not implicate the Confrontation Clause.

---

[5] The dissent argues that the incident reports are testimonial because an administrative rule violation can also result in a criminal prosecution or because the reports were offered against Wells in this case. *Post* at ¶43. But the relevant question under the Confrontation Clause is whether the reports were initially "*procured* with a primary purpose of creating an out-of-court substitute for trial testimony." *Clark*, 135 S. Ct. at 2180 (emphasis added) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). For example, a dying victim's statement to police can be *used* to prove guilt at trial so long as victim's "conversation [with police] was primarily aimed at quelling an ongoing emergency, not establishing evidence for the prosecution." *Id.* The statement is non-testimonial because of the circumstances under which it was made. *Id.* It does not become testimonial when it is later used to prove guilt at trial. In the same way, the incident reports in this case are non-testimonial because they were not created for the primary purpose of aiding the prosecution in a criminal case. They did not become testimonial when they were used at Wells's hearing.

**II. The circuit judge did not misapply *Miller* or abuse his discretion.**

¶12. In *Miller*, the United States Supreme Court held that the Eighth Amendment to the Federal Constitution prohibits the "mandatory" imposition of a life-without-parole sentence if the offender was under the age of eighteen at the time of his offense. *Miller*, 567 U.S. at 465. "*Miller* does not prohibit sentences of life without parole." *Parker*, 119 So. 3d at 995 (¶19). But it does require the sentencing judge "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* (quoting *Miller*, 567 U.S. at 480). *Miller* also identified several factors that the sentencing judge must consider:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Parker*, 119 So. 3d at 995-96 (¶19) (citations omitted) (quoting *Miller*, 567 U.S. at 477-78).

¶13. The burden is on the offender to convince the judge that the *Miller* factors are sufficient to prohibit the imposition of a sentence of life without the possibility of parole. *Wharton*, 2019 WL 6605871, at *4 (¶25); *Jones v. State*, 122 So. 3d 698, 702 (¶14) (Miss. 2013). "If . . . the judge determines that *Miller* does not mandate parole eligibility, then the

8

judge *must* deny relief because the Legislature has provided by law that persons convicted of murder are not eligible for parole." *Cook*, 242 So. 3d at 873-74 (¶27); *see also Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993) ("It is the [L]egislature's prerogative, and not this Court's, to set the length of sentences.").

¶14.   "[T]here are two applicable standards of review in a *Miller* case." *Chandler*, 242 So. 3d at 68 (¶7).  "[W]hether the trial court applied the correct legal standard is a question of law subject to de novo review." *Id.*  "If the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion." *Id.*

¶15.   Our Supreme Court outlined the "correct legal standard" in *Parker*: the sentencing judge must conduct a hearing and consider the several factors that the *Miller* opinion identified as relevant to the sentencing decision.  *Chandler*, 242 So. 3d at 68 (¶¶8-9) (citing *Miller* and *Parker*).  In this case, the circuit judge not only held an evidentiary hearing but also appointed attorneys to represent Wells, authorized funds for Wells to hire a mitigation specialist, and appointed Dr. Criss Lott to conduct a psychological assessment to be used in mitigation.  Following the hearing, the judge issued a written decision that addressed the relevant *Miller* factors and their application to the facts of this case.  Therefore, the judge applied the correct legal standard in reaching his decision.  *Id.*  We now consider the circuit judge's application of the *Miller* factors.

¶16.   At Wells's *Miller* hearing, the State introduced testimony and exhibits from Wells's trial, the prison records discussed above, Wells's indictment and guilty plea arising out of a 2016 assault on a correctional officer, and a letter that Wells wrote to the circuit judge in

2017.[6] The State called no witnesses other than an investigator from the district attorney's office to authenticate certain exhibits.

¶17. Wells called three witnesses: his uncle, Clenest Wells; a mitigation specialist (now his appellate counsel), Stacey Ferraro; and Dr. Lott. Clenest Wells testified that Wells was a good child and a good student until around the age of twelve or thirteen, when he fell under the influence of relatives who used drugs and alcohol and committed crimes. Clenest Wells opined that with the right guidance his nephew could succeed outside of prison.

¶18. Ferraro testified that Wells's parents were both drug addicts and that his father was in and out of prison. As a result, Wells was adopted by his paternal grandparents when he was less than a year old.[7] Wells's grandfather died when Wells was only three years old, leaving his grandmother to raise him. Wells's grandmother, stepsister, and uncle Clenest were all loving, positive influences on him. However, Ferraro testified that Wells was influenced by his other uncles, who used drugs and were involved in drug dealing and other criminal activity. Wells began using alcohol and marijuana by the time he was twelve years old. Ferraro opined that based on the *Miller* factors, Wells should be resentenced to be eligible for parole. She testified that Wells is an avid reader and has great potential for

---

[6] In the letter, Wells claimed that he was only "defending [him]self" when he assaulted the corrections officer in 2016. Wells also asserted that when he was originally arrested in 2008, "the police jumped on [him] because [he] wouldn't let them talk to [him] in a disrespectful manner or treat [him] like an animal." Wells said there was "no fairness or justice" in his treatment. Wells wrote to the judge that he is now a "changed person" and "a young man who is striving for betterment." Wells did not express any remorse or regret for having murdered Michael Porter.

[7] Wells told Dr. Lott that his parents were "in and out of [his] life." Wells's father died in 2010.

10

rehabilitation. She admitted that Wells had committed numerous rules violations while incarcerated, but she contended that his violations had become less frequent, which she attributed to "some maturity and some growth and some learning the rules too."

¶19. Dr. Lott testified that Wells was selling drugs for his uncles by the time he was twelve years old and that the youth court sent him to Oakley Training School twice prior to the murder at issue in this case. Dr. Lott testified that Wells "was of average intelligence," and he did not identify any significant mental health issues. Dr. Lott opined that Wells was not one of the "rare" offenders who should be denied relief under *Miller*, though he conceded that Wells continued to demonstrate "defiant" and "belligerent" behavior at times.

¶20. Following the hearing, the circuit court entered an order that addressed the *Miller* factors and found that Wells was not entitled to relief under *Miller*. The court noted that Wells was nine days short of his sixteenth birthday when he murdered Porter. The court discussed Wells's family background, his criminal history, and the facts of this case. The court concluded, with substantial support in the evidence, that Wells was not only the trigger man in the murder but also "the ringleader" and that "[i]t was Wells'[s] idea to commit the robbery." Wells "procured the weapon used to kill" Michael Porter, "hid the weapon afterwards," and then "brazenly lied about it when questioned by law enforcement." Wells "armed himself in advance, intended to use and did use deadly force, and deliberately murdered Michael Porter in cold blood." The court found that this was *not* an "impulsively committed crime," as Ferraro and Dr. Lott attempted to portray it. The court also found that Wells was experienced and competent to deal with law enforcement based on his intelligence

11

level and prior experiences in the youth court system.

¶21. The court found that Wells's long history of "antisocial behavior" had continued during his incarceration. Wells had thirty-one rule violation reports, including for fights, possessing gang material and other contraband, threatening to "gun down" a correctional officer, and repeated citations for possessing sharpened instruments. Moreover, in 2016 Wells physically assaulted a corrections officer at the JCADC and ultimately pled guilty to the felony of simple assault on a corrections officers. The court also found that there was no evidence that Wells had been rehabilitated while in prison. The court had "zero confidence" that Wells would not continue to commit crimes if he were ever released on parole. The court concluded, "Upon consideration of the evidence and record herein, and having considered each of the *Miller* factors relevant to a consideration of parole, the Court finds that [Wells] does not qualify to be re-sentenced in such as a manner as to make him eligible for parole consideration."

¶22. In summary, the circuit judge held the hearing that *Miller* requires, the judge recognized and applied the correct legal standard ("the *Miller* factors"), the judge's application of that standard was neither arbitrary nor an abuse of discretion, and the judge's findings of fact are all supported by substantial evidence. Therefore, the judgment of the circuit court must be affirmed. *Jones*, 285 So. 3d at 634 (¶24).

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED**

**BY McDONALD AND McCARTY, JJ.  LAWRENCE, J., NOT PARTICIPATING.**

**WESTBROOKS, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶24.    I concur with the result and much of the analysis in the majority opinion; however, because I believe that the court erred by admitting the Incident Report from MDOC (S-6), Jackson County Adult Detention Center Conduct History (S-7), and MDOC Security Threat Group Participation form (S-15)—all containing prejudicial testimony about Wells and in violation of his right to confrontation—I respectfully dissent in part.

¶25.    The State's witness, Investigator Jason Smith, admitted that although he collected the information from the respective agencies, he did not prepare the documents and had no first-hand knowledge of the documents' contents. Wells argues that introducing the documents into evidence during his sentencing hearing violated his constitutional right to confront the witnesses who prepared the documents and those with first-hand knowledge of the alleged events contained therein.

¶26.    The State contends that the Confrontation Clause does not apply to sentencing hearings and argues that even if it did, the incident reports from MDOC and the Jackson County Adult Detention Center are not testimonial statements.  The State asserts that the agencies created the rule violation reports (RVRs) as administrative records of Wells's infractions while in custody—not primarily for an evidentiary purpose. The State further argues that any potential defect related to the admission of the MDOC Security Threat Group Participation form, which reported that Wells was a gang member, was cured by Dr. Lott's

13

expert report and testimony stating that Wells was in a gang.[8]

¶27.    Wells cites the ruling in *Crawford v. Washington*, 541 U.S. 36 (2004), as support for his assertion that the documents reflecting his alleged post-incarceration rule violations and gang affiliation were indeed testimonial and should not have been admitted. In *Crawford*, the U.S. Supreme Court held that testimonial out-of-court witness statements are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to conduct cross-examination. *Id.* at 68-69. The petitioner, Crawford, alleged that his rights under the Sixth Amendment's Confrontation Clause were violated when the State, over his objection, was allowed to introduce a recorded statement made by Crawford's wife, Sylvia; the bar extended by marital privilege rendered Sylvia unavailable to testify at trial. *Id.* at 38-40. Sylvia's statement did not fully align with Crawford's account of the events that ultimately led to his conviction. *Id.* The Court held that because Crawford did not have an opportunity to cross-examine Sylvia, the admission of her testimonial out-of-court statement was in violation of the Sixth Amendment. *Id.* at 68. Here, Wells alleges the RVRs, like Sylvia's statement, are testimonial in nature and should be subject to the Confrontation Clause.

### A.    The Confrontation Clause should apply to Miller hearings.

¶28.    The Sixth Amendment's Confrontation Clause found in the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be

---

[8] The sentencing court also had a copy of the expert report from Dr. Lott, stating that Wells was in a gang. No objection was made to the introduction of the gang information in Dr. Lott's testimony or his report.

14

confronted with the witnesses against him." U.S. Const. amend. VI; *Crawford*, 541 U.S. at 42. Likewise, Mississippi's Constitution extends similar protections under Article 3, Section 26, which states in pertinent part, "[I]n all criminal prosecutions the accused shall have a right . . . to be confronted by the witnesses against him." Miss. Const. art. 3, § 26.

### 1.     Federal Application at Sentencing Phase

¶29.    "The U.S. Supreme Court has held that the Confrontation Clause does not apply during the sentencing process." *Burgess v. State*, 178 So. 3d 1266, 1280 (¶42) (Miss. 2015) (citing *Williams v. Oklahoma*, 358 U.S. 576 (1959)).  In the wake of *Crawford*, "the federal circuit courts continue to apply *Williams* and do not recognize a right to confrontation during sentencing proceedings." *Id.* (quoting *Conner v. State*, 138 So. 3d 143, 152 (¶26) (Miss. 2014)).

### 2.     Mississippi Application at Sentencing Phase

¶30.    The Mississippi Supreme Court has untethered itself from the federal courts by extending the application of the Mississippi Constitution's Confrontation Clause in Article 3, Section 26, to sentencing hearings held before a jury.  *See Conner*, 138 So. 3d at 152 (¶26); *see also*, *Pitchford v. State*, 45 So. 3d 216, 252 (¶161) (Miss. 2010); *Lanier v. State*, 533 So. 2d 473, 488-90 (Miss. 1988).  But "no such extension has [yet] been made to sentencing before a trial judge." *Burgess*, 178 So. 3d 1266, 1280 (¶42).

¶31.    In *Burgess*, the adult defendant was indicted and tried on three counts of sexual battery.  *Id*. at 1269 (¶1).  At Burgess's sentencing hearing, the trial court admitted fourteen victim-impact letters from the victim, family members and co-workers into evidence.  *Id*. at

15

1279 (¶38). Burgess contended that the admission of the letters violated his Sixth Amendment right to confrontation, the evidentiary rules against hearsay, and the rules of discovery. *Id.* Standing on firm precedent,[9] the Court held that victim-impact statements submitted to the prosecuting attorney for presentation to the court are admissible. *Id.* at 1250 (¶40). The Court also held that the letters were admissible at sentencing because Burgess's case involved a sentencing by a judge, not a jury; Burgess's right to confrontation was not violated. *Id.* at 1281 (¶44). Also noteworthy, the Mississippi Supreme Court found that "the evidence contained in the letters was merely cumulative of that presented at trial, and the judge explained how he could impose the maximum sentence without even considering the letters." *Id.* at 1279-81 (¶¶40-42, 44).

¶32. Admittedly, Wells's sentencing occurred before a trial judge, not a jury, and if his circumstances mirrored those of Burgess (i.e., an adult sentencing), the Confrontation Clause would have no application. However, Mississippi has not yet addressed whether the Confrontation Clause extends to this excepted class of sentencing proceedings for a juvenile offender. Because *Miller* hearings, by their very nature, are distinguishable from a traditional adult sentencing hearing before a jury or judge, we should encourage our Supreme Court to conclude that evidence used to establish or rebut the *Miller* factors should be subjected to the scrutiny of the Sixth Amendment Confrontation Clause.

### 3. *Application to Miller Hearings*

¶33. At *Miller* hearings, the sentencing authority considers a juvenile offender's "youth and

---

[9] *Hansen v. State*, 592 So. 2d 114 (Miss. 1991) (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)); *see also* Miss. Code Ann. § 99-19-157(2)(b) (Rev. 2015).

attendant characteristics," which are "[(1)] immaturity, impetuosity, and failure to appreciate risks and consequences . . . [(2)] the family and home environment that surrounds him . . . [(3)] the circumstances of the homicide offense, including the extent of his or her participation in the conduct and the way familial and peer pressures may have affected him . . . [(4)] that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or incapacity to assist his or her own attorneys[,] . . . [a]nd finally [(5)] the possibility of rehabilitation." *Miller*, 567 U.S. at 477-78. Mississippi's statutory scheme requires the consideration of aggravated and mitigating circumstances in sentencing proceedings for capital cases prior to the imposition of the death penalty. Miss. Code Ann. § 99-19-101 (Rev. 2015). Likewise, the consideration of each *Miller* factor is required before an offending juvenile is deemed "permanently incorrigible" or whether his crimes reflect "transient immaturity" and should not render him subject to what is essentially a death sentence. *See Graham v. Florida*, 560 U.S. 48, 69 (2010). Evidence submitted in support of these assertions is "'particularly relevant'—more so than it would have been in the case of an adult offender." *Miller*, 567 U.S. at 476. Unlike the evidence challenged in *Burgess*, *supra*, evidence submitted for a *Miller* sentencing is not merely cumulative or administrative in nature (i.e., a correctional facility pen pack). Often times, the court considers it as mitigating or aggravating evidence that is essential to deciding whether or not a juvenile should receive the ultimate punishment that condemns a person to take his last breath in jail.

17

¶34.    In *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the U.S. Supreme Court described the *Miller* holding as "[a] substantive rule [that] forbids 'criminal punishment of certain primary conduct' or prohibits 'a certain category of punishment for a class of defendants because of their status or offense.'" *Id*. at 732 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)).  Unlike an adult sentencing, *Miller* "'necessarily carr[ies] a significant risk that a defendant' — here, the vast majority of juvenile offenders —'faces a punishment that the law cannot impose upon him.'" *Id.* at 734 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)).  "Substantive rules [like the one in *Miller*] set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose," *id.* at 729, and it should necessarily follow that every protection possible, including that of the Confrontation Clause, should be afforded to this special class of offenders before a sentencing authority imposes what would otherwise be an illegal sentence. The U.S. Supreme Court recognized that "children are constitutionally different from adults for purposes of sentencing," and without specific guidelines for application of the factors, the sentencing authority is granted great discretion over their fates.  *Id.* at 733.  The same differences should favorably impact juveniles as this Court contemplates the extension of the Confrontation Clause's protections at *Miller* hearings.

¶35.    During *Miller* sentencing hearings, juveniles "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Id.* at 736-37.  "*Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders

18

raises a grave risk that many are being held in violation of the Constitution." *Id.* at 736. Before imposing a sentence of life without parole on a juvenile, the sentencing authority must, from the factors and evidence presented, determine whether the youth "exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified." *Id.* at 733-34. Evidence presented, in Wells's case and other *Miller* cases, includes the RVRs.

¶36. Because of the heightened impact of the evidence, *Miller* juvenile defendants should be afforded the protections offered by the Confrontation Clause. Notwithstanding Wells's most recent conviction, the court would have relied solely on the information in the disputed documents as evidence that Wells continued to exhibit unfavorable behavior after his conviction; the truth of these allegations could directly impact the court's view of Wells's rehabilitative potential. The allegations contained in those reports would have been material to the outcome of Wells's hearing and the finding that he is permanently incorrigible.

¶37. Although the federal courts have not done so, our State is not subject to any prohibition that would prevent us from broadening minimum constitutional protections for this narrow group of minors who are convicted of a felony. We should not "dismiss the actuality that our [Court] is not bound by the United States Supreme Court's decisions when guaranteeing or extending more protections under the Constitution. The system of federalism envisaged by the United States Constitution tolerates [a] divergence even if the result provides greater protection of individual rights under state law than under federal law."[10]

---

[10] *Watts v. State*, 281 So. 3d 873, 889 (¶16) (Miss. Ct. App. 2019); *see also Hardison v. State*, 94 So. 3d 1092, 1101 (¶¶32, 33) (Miss. 2012) (finding that erroneous denial of a

¶38. Wells's status as a convicted murderer is not disputed and does not necessarily preclude him or any other guilty juvenile defendant sentenced to life without parole from the protections of the Confrontation Clause. As noted in *Burgess*, Mississippi has already extended the right to confrontation to adults convicted of capital murder at the sentencing phase. By the same token, guilt should not bar juvenile offenders from the same safeguards when convicted of a capital offense. Accordingly, and for the reasons stated above, I would extend the Confrontation Clause to *Miller* hearings for juveniles.

### B. RVRs are testimonial in nature for the purpose of Miller hearings.

¶39. Having applied the Confrontation Clause to *Miller* hearings, I now turn to the issue of whether the contested evidence, specifically the RVRs, submitted at Wells's hearing was indeed out-of-court testimony and subject to the Confrontation Clause. This Court has held that a "document is testimonial when it is created for the sole purpose of the State's use as evidence against the defendant." *Vanwey v. State*, 147 So. 3d 367, 369 (¶10) (Miss. 2014) (citing *Grim v. State*, 102 So. 3d 1073, 1078 (¶12) (Miss. 2012)). *Crawford* prohibits the introduction of such evidence absent the witness's unavailability and the defendant's opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68-69. As testimonial evidence, the majority of the RVRs submitted at Wells's *Miller* hearing were entered into

---

defendant's peremptory challenge violates the Due Process Clause and warrants automatic reversal if no proper *Batson* analysis is conducted prior to the denial despite the United States Supreme Court's ruling in *Rivera v. Illinois*, 556 U.S. 148 (2009), which held that such a denial did not warrant automatic reversal under the Due Process Clause of the Fourteenth Amendment).

evidence in violation of Wells's Sixth Amendment rights under the Confrontation Clause.[11]

¶40.    Mississippi has not addressed the issue of prison disciplinary records as they relate to the Confrontation Clause.  As persuasive authority, Wells cites caselaw from Texas, where the court ruled that inmate disciplinary grievance records are testimonial in nature "because they contain[] [inadmissible] testimonial statements . . . from corrections officers whom the defendant did not have the opportunity to cross-examine." *Smith v. State*, 420 S.W.3d 207, 224 (Tex. App. 2013) (internal quotation marks omitted) (citing *Russeau v. State*, 171 S.W.3d 871, 880-81 (Tex. Crim. App. 2005)).  The Texas court further noted that the statements in the reports "amounted to unsworn, ex parte affidavits of government employees and were the very type of evidence the Confrontation Clause was intended to prohibit." *Id.* at 224 (citing *Crawford*, 541 U.S. at 50).  I maintain that the same is true here.

¶41.    Generally, a statement is "testimonial" if it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51.  "Various formulations of . . . testimonial statements exist: ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id*. (internal quotation marks omitted).  "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity

---

[11] One of the RVRs reported an incident where Wells assaulted a correctional officer. Wells was later charged and pled guilty to the assault; thus, the confrontation clause would not have been applicable to that particular RVR at the subsequent *Miller* hearing.

21

to cross-examine. " *Id.* at 59.

¶42.    In its *Miller* analysis, the circuit court references Wells's rule violations as purported in the correctional facilities' documents.  The court acknowledged that the alleged violations were heavily considered: "[thirty-one] rules violations reports for various infractions ranging from refusing to obey orders, possessing gang material in 2014, threatening to 'gun down' a female officer  to possessing sharpened instruments on three separate occasions" were all taken as truth for the purpose of making its determination under *Miller*.

¶43.    The majority opines that the RVRs were created solely for internal record-keeping purposes.  Indeed, the RVRs allow correctional facilities to document inmate infractions, but that is not necessarily their primary purpose.  The same RVRs inherently provide a basis for future prosecution at the State's discretion, as demonstrated by Wells's post-incarceration conviction.  Here, the State introduced Wells's RVRs as the functional equivalent of in-court testimony *offered solely to prove* that Wells committed the multitude of infractions contained therein and should be deemed permanently incorrigible under *Miller*.  For these reasons, I would find that the RVRs were testimonial in nature and should have been subjected to the Confrontation Clause.

### C.    *Wells's post-incarceration conviction rendered the error harmless.*

¶44.    Notwithstanding the RVRs, the court also considered Wells's post-incarceration conviction, which as noted, also *began as a rule violation*.  Because Wells pled guilty to and was convicted of assault post-incarceration, the court could have taken judicial notice of Wells's conviction for consideration at the *Miller* hearing.  Alone, the conviction provides

a sufficient and independent basis to support the court's determination.

¶45.   A sentence of life without parole is the most severe punishment a juvenile offender can receive, and the mitigating or aggravating evidence purported to support a sentence of life without parole should be admitted within the confines of the Confrontation Clause. Accordingly, RVRs offered as evidence of a juvenile's permanent incorrigibility at *Miller* hearings should be subjected to the protections guaranteed by the Confrontation Clause. However, because of Wells's post-incarceration conviction, the admission of the RVRs in violation of the same would be harmless error and not warrant reversal. *Hutto v. State*, 227 So. 3d 963, 980 (¶49) (Miss. 2017).

¶46.   For the foregoing reasons, I respectfully dissent in part, but I concur with the result reached by the majority opinion.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**